MINNIE SMITH v. STATE.

No. A-5563.   Opinion Filed June 14, 1926.
(246 Pac. 1109.)

J. Hugh Nolen and Guy L· Trimble, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.   In this case the information charges that in Okfuskee county, August 11, 1924, Minnie Smith "did then and there have and keep in her possession 1½ pints of whisky with the unlawful intent" to sell the same.   On the trial she was found guilty and her punishment fixed at a fine of $100 and confinement in the county jail for 90 days.   From the judgment rendered on the verdict she appeals.

The state relied for this conviction upon the testimony of Frank Gaghagen, deputy sheriff, and W. L. Payne, chief of police, admitted over the defendant's objection that it was obtained by an unlawful search, was to the effect that they searched the defendant's place of business, in Okemah, and failed to find any whisky there or in her living room, but did find three pop bottles containing whisky among a stack of pop cases and empty bottles behind the building. The witness Gaghagen testified that the defendant did not make any objection to the search. He was then asked and answered as follows:

"Q. What did she tell you about it? A. I think she said it was all right—I won't be positive about that."

The witness Payne, over the defendant's objection, was asked the following question:

"Q. Shate whether or not she consented to you searching the premises? A. She said, 'Go ahead and search; there is no whisky here.' "

It appears that the affidavit was made on information and belief, describing the place to be searched as lots 19 and 20 in block 15 in Okemah, but fails to name any person as owner or occupant of the same, and was sworn to by the witness W. L. Payne.

The search warrant described the premises as occupied by John Doe. The court sustained the motion to strike out the evidence because obtained under an illegal search warrant and directed the jury to return a verdict of not guilty. The county attorney objected on the ground that the testimony showed that the defendant waived her constitutional rights. The jury were excused, after the argument of counsel the jury were returned, and the court made the following order:

"The remarks of the court with reference to instructing the jury to return a verdict of not guilty are withdrawn. The court was under an erroneous belief as to the law."

Minnie Smith in her own behalf testified that the officers came into her place of business with a search warrant, which was handed to her, and while she was reading it they searched the place and did not find any liquor there; that she did not have any liquor there; that there was an alley alongside the place and a vacant lot behind where they had shows at times; that the reason she did not object to the search was on account of the search warrant.

A number of errors are assigned and argued, but one of which it is deemed necessary to notice, and that is that the court erred in setting aside its order striking out all the evidence in the case and setting aside its instruction to the jury to return a verdict of not guilty, and then submitting the cause to the jury on the theory that the defendant had waived her constitutional rights.

The trial court properly held the affidavit upon which the search warrant was issued insufficient, and that the search warrant was void, but in our opinion the court's finding that the defendant waived her constitutional rights is not sustained by the evidence.

In United States v. Rembert (D. C.) 284 F. 996, Judge Hutcheson, delivering the opinion of the court, said:

"The principle invoked by the defendant is so fundamental, and the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures is so clearly guaranteed by the Constitution (Amendment 4), that it would seem that the limits of the rights of an officer in the enforcement of law, and of a citizen in the enjoyment of his liberties, ought to be as well understood and as well observed as copybook maxims, for there can be no liberty except where there is a just and proper law enforcement, and there can be no proper law enforcement where liberty is unlawfully infringed.

"The fact, which is all too evident, on the one hand, that overzealous officers are not nice to find these limits and live within them, and, on the other hand, that the peaceable

and law-abiding citizen is loth to enter upon a dispute with officers of the law when his guaranteed rights are infringed, makes it not only permissible, but desirable, that the court now briefly state the legal principles which control the matter of arrest and searches in such clear and definite form as that no federal officer can hereafter claim the excuse of ignorance when he violates a fundamental law, in order to secure evidence of the violation of some other law, and that well-disposed and law-abiding citizens may be advised of their obligations in the premises.

"It must be first promised that, where an officer politely and decently, and without physical threat has assumed to act in his official capacity, he is acting de facto, if not de jure, and a peaceful citizen should not forcibly resent the action, even though he knows the officer is, as to the act, greatly exceeding his authority, resting confidently upon the belief that this submission will not impair any of his constitutional rights; for, as the courts have repeatedly held, such action will not be taken to be a consent to an unlawful search or arrest, but merely a peaceful submission to officers of the law. United States v. Slusser (D. C.) 270 F. 819; Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 864, 13 A. L. R. 1303; Amos v. United States, 255 U. S. 317, 41 S. Ct. 266, 65 L. Ed. 654.

"Any other course on the part of the citizen would place him in the difficult and dangerous position of undertaking to protect by force the rights which in his opinion the officers are seeking to impair, when it may turn out that the officer in fact has the authority, and his action may, in fact, be legal. This principle, that the courts of the United States will not put the citizen to the alternative of contesting by force with officers, or waiving his constitutional rights, runs through the federal decisions, and gives character and meaning to their emphatic holding that evidence illegally obtained cannot be used, and that the submission of a citizen to the officer cannot deprive him of his constitutional rights, unless the evidence clearly shows that the submission was really voluntary and with a desire to invite search, and not done merely to avoid resistance."

In Salata v. U. S., 286 F. 125, the Circuit Court of Appeals, Sixth circuit, used the following language:

"The further claim of the United States, that the plaintiff waived any constitutional right he might have had, and gave to these officers full permission to search his premises, regardless of the validity of the search warrant, is not sustained by the evidence. The witness, Beilstein, testified that, when he handed this search warrant to Salata and told him it was a search warrant to search his premises, Salata said: 'Go ahead; you have full liberty to go all through the place.' I do not say that he used the word 'liberty,' but he did say, 'Go ahead.' "

"Upon the presentation of what appeared to be a valid search warrant Salata had no choice other than to permit the officers to make the search that the warrant purported to authorize. At that time and under those circumstances neither the words 'go ahead,' nor 'Go ahead; you have full liberty to go all through the place,' can be construed as an invitation on the part of Salata to search his premises without a search warrant, but rather that it was not his intention or purpose to offer any resistance to the officers in the performance of their duty under what he believed, and had a right to believe, was a valid search warrant issued by competent authority on a proper showing of probable cause."

There is much conflict of authority as to what constitutes a waiver of defendant's constitutional rights in search and seizure cases. We think the rule supported by reason and the weight of authority requires the state, where objection is properly made, to show that defendant waived his constitutional rights by freely and voluntarily consenting to the search. The right of the citizen to occupy and enjoy his home, however mean or humble, free from arbitrary invasion and search, has for centuries been protected by every court in the English speaking world, from Magna Charta down to the present, and is embodied in every bill of rights defining the limits of governmental power in our own republic.

The mere fact that a man is an officer, whether of high or low degree, gives him no more right than is possessed by the ordinary private citizen to enter and search

the private premises of another for evidence of crime without a legal warrant procured for that purpose.

In People v. Glennon, 37 Misc. Rep. 1, 74 N. Y. S. 794, after pointing out that policemen have no right to invade and search private houses without a warrant and on mere suspicion or hearsay that some sort of crime may have been committed therein, or that such house contains some evidence that a crime has been committed, Judge Gaynor said:

"If it were so that we are all open to have our houses invaded, ransacked and searched by policemen on nothing except what they may chose to call their suspicions, and that we may be arrested in the same way, we would not be living under a free government, but under a most intolerable despotism, the like of which former generations struggled against until they obtained those guaranties of individual rights and liberties which made them free, the chief of which were that their houses should not be invaded and searched, and that they should not be seized except by due warrant and process of law."

It follows from what has been said that the evidence challenged in this case was taken by the officers by unlawful search and seizure, and contrary to section 30, Bill of Rights.

The defendant's conviction, having no sufficient foundation to support it without the use of evidence which had been unlawfully obtained, is reversed, with directions to dismiss.

BESSEY, P. J., and EDWARDS, J., concur.