## T. C. SHOCKLEY v. STATE.

No. A-5638. Opinion Filed Dec. 18, 1926.
(251 Pac. 514.)

A. W. Anderson and D. E. Ashmore, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J. On information charging that on or about January 23, 1925, T. C. Shockley did unlawfully have in his possession 90 gallons of mash, he was tried and convicted, and his punishment fixed at confinement in the county jail for 60 days and a fine of $100. To reverse the judgment rendered on the verdict, he appeals and assigns as error the admission of evidence obtained by an unlawful search of his home.

The state relied for this conviction on the testimony of Billy Boots and George Loots, deputy sheriffs, admitted over the defendant's objection that it was obtained by an unlawful search. Their testimony was to the effect that they searched the defendant's home about four miles west of Henryetta and found in an outhouse two barrels, containing mash fit for distillation.

Boots testified:

"I had a search warrant out of Judge Hinton's court; he is a justice of the peace. We went to the barn, defendant was east of the house, probably 100 yards; I went

down where he was and told him we wanted to look his place over, and he said it was all right to go ahead, and we did."

George Loots testified:

"We went out there to search his place. I asked the defendant if he had any whisky or a still there at the place and he said, 'No,' he didn't. I went in the building, and he came up and asked me 'to go on and let him alone and not bother him.' "

The state rested, and the defendant moved for a directed verdict on the ground that all the evidence was obtained illegally and unlawfully.

, The record shows, beyond a doubt, that no search warrant was served, as required by law, and the search of the defendant's home was without authority of law, unless the defendant waived his constitutional rights.

The witness Boots testified that he made the search under authority of a search warrant, and that the defendant, after they went upon the place, said to "go ahead."

Officer Loots testified that the defendant stopped him and asked him to go on and let him alone.

We do not think that the defendant waived his constitutional rights.

In Smith v. State, 34 Okla. Cr. 434, 246 P. 1109, we said:

"There is much conflict of authority as to what constitutes a waiver of defendant's constitutional rights in search and seizure cases. We think the rule supported by reason and the weight of authority requires the state, where objection is properly made, to show that defendant waived his constitutional rights by freely and voluntarily consenting to the search. The right of the citizen to occupy and enjoy his home, however mean or humble, free from arbitrary invasion and search, has for centuries been protected by every court in the English speaking world, from Magna Charta down to the present, and is embodied in

every Bill of Rights defining the limits of governmental power in our own republic.

"The mere fact that a man is an officer, whether of high or low degree, gives him no more right than is possessed by the ordinary private citizen to enter and search the private premises of another for evidence of crime without a legal warrant procured for that purpose."

And see Whitford v. State, 25 Okla. Cr. 187, 249 P. 430; Graham v. State, 31 Okla. Cr. 125, 237 P. 462.

The admitted acts of the officers show that they acted without authority of law.

It has been repeatedly decided by this court that evidence in liquor prosecutions, obtained by an unlawful search and seizure, and contrary to section 30 of the Bill of Rights, is inadmissible against the defendant, as being in violation of section 21 of the Bill of Rights, giving one accused of crime immunity from becoming a witness against himself. Committi v. State, 28 Okla. Cr. 380, 231 P. 316, and cases collated.

The judgment of the lower court is reversed and cause remanded, with direction to discharge the defendant.

BESSEY, P. J., and EDWARDS, J., concur.