MARVIN ELMO SIMS v. STATE.

No. A-10109.   Jan. 7, 1942.
(121 P. 2d 317.)

322

Falkenstine & Fisher, of Watonga, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, Marvin Elmo Sims, was charged in the county court of Canadian county with the crime of unlawful transportation of intoxicating liquor, tried, convicted, and sentenced to serve 30 days in the county jail and pay a fine of $50, and he has appealed to this court.

The only contention presented in the brief of the defendant is that the evidence does not show that the defendant committed any crime in the presence of the arresting officers at the time of, or immediately prior to, the search and seizure so as to authorize a search and seizure without a warrant.

The defendant was arrested about 3 o'clock a. m., by two highway patrolmen at the intersection of highways 66 and 270, about nine miles west of El Reno, and approximately 100 pints of whisky were found in the turtle-back of the defendant's automobile.

Certain facts are undisputed, to wit:

(1) That the officers did not have a search warrant nor a warrant for the arrest of the defendant.

(2) That the defendant was the owner and operator of the automobile and had therein the large amount of whisky found by the officers on that occasion.

The defendant filed a written motion to suppress the evidence before the commencement of the trial. The two highway patrolmen and the defendant and a passenger in the defendant's automobile testified in the hearing on this motion.

The highway patrolmen testified that the defendant was stopped and arrested because he was operating his automobile in a reckless manner and violating the rules of the road.

Patrolman Etheridge testified in this connection as follows:

"A. The patrol car and the car driven by Mr. Sims was headed in an easterly direction on U. S. Highway No. 66 at a point nine miles west of El Reno and this car was observed to swerve across the black line, back to the south side or shoulder of the road going in an easterly direction, ran off the shoulder, continued on

to an intersecting road that connects 270 and 66, turned in a northerly direction, run a stop line up there, was weaving back and forward on the road, stopped on U. S. 270 about 100 yards north of the stop sign at the intersection of the road to the county road, it isn't a part of the highway, it is a cut-off about nine miles west, directly west of the filling station, it runs in front of the filling station, it is not 270 or 66 either."

Upon further questioning, Etheridge testified that the patrol car was directly behind the defendant's car, about 100 yards, when they first observed it swerve over the center line, and that it swerved in such a manner that an oncoming car was forced to leave the highway.

Patrolman Sisney testified in this connection as follows:

"A. Patrolman Etheridge and myself were patrolling east on 66 at a point nine miles and a half or ten miles west of El Reno. I was driving, I noticed a car ahead of me that was going slow and weaving, it went across the black line, then across on the right hand side to the shoulder. I called it to the attention of Mr. Etheridge, and said 'look at that car,' then a car came from the east, this car pulled toward and across the black line and the other car pulled off the pavement. Q. You mean the car going in the westerly direction met this car and drove off the pavement? A. Yes, sir. This car pulled the wheels off the pavement and went on. Q. Which car? A. The car that met Sims. Sims went on east and we followed, we went ahead and stopped this car, we would have stopped it sooner but another car came along and he pulled over to the west across the line, this car left the pavement, Sims went on east and turned to the left. Q. Where? A. About nine miles west, a little by-road at the intersection of 270 and 66, just to the west side of that filling station, he turned left at this point, before we could stop him he was 150 feet north on 270. Q. Did you get out of the patrol car at that time? A. Yes, sir. Q. What did you do? A. I im-

mediately went to the door of Sims' car. Q. Did you ask him to step out of the car. A. I asked for an explanation of that kind of driving; he said he guessed his lights were poor. I said I would have to place him under arrest for violation of the rules of the road. Q. Sims made some statement about his lights? A. Yes, I said, 'Let's see you walk up and down.' I could smell whisky on his breath; he walked up and down the road for me, he walked all right. I looked in the front seat, I seen part of a pint, I looked in the car and seen another part of a pint on the floor boards. I asked Sims to raise the turtle-back, he did so, he got the keys out of the car, he raised it up, and we could see the packages."

On cross-examination it was disclosed that Sisney filed charges against the defendant in the justice of the peace court the next morning for violating the rules of the road. It is not disclosed what disposition was made of this charge. The information against the defendant herein was verified by the sheriff of Canadian county and not by the highway patrolmen.

The defendant testified that he was driving slowly, getting ready to make the turn where Highway 66 intersects with 270; that he pulled over past the center of the line, preparing to make the turn to the left, when he saw an oncoming car which caused him to pull back to the right and off the road on the shoulder, where he stopped until the car had passed; that he misjudged the speed of the other car and saw that he could not make the turn, so he pulled back to the right-hand side of the road and stopped his car until the other car passed. That after the car had passed, he turned at the intersection and drove 300 or 400 feet before the patrolmen came up and stopped him.

On cross-examination the defendant admitted former convictions for possession of whisky and for driving

an automobile while under the influence of intoxicating liquor.

One Petree testified that he was an occupant of the defendant's automobile at the time he was stopped, and his testimony as to what caused the defendant to operate his automobile in the manner in which it was operated is in substance the same as the defendant's.

On cross-examination he admitted that he had been drinking that night, and further admitted that he had been convicted three times for the crime of possession of intoxicating liquor.

Counsel for defendant have written an excellent brief, citing some decisions of this court where it was apparent from the evidence that the testimony of officers was given merely as a subterfuge to try to justify an unlawful search of the accused's property. We have no criticism to make of the decisions cited by the defendant. The question as to whether a defendant has committed an offense in the presence of the officer, which justifies his arrest by the officer and a subsequent search of his automobile, necessarily depends upon all of the facts and circumstances of the particular case.

In the cases cited by counsel for the defendant, no charges of a violation of the law other than the violation of the liquor law as disclosed by the unlawful search by the arresting officer were made; and it was apparent from those cases that the officers were trying to testify concerning an alleged violation of the law merely as a subterfuge to justify their unlawful search.

Here we do not have a similar situation. From the testimony of the officers, corroborated in part by the defendant himself, it is evident that the defendant violated the rules of the road. The officers arrested the

defendant for this violation of the law and followed the matter by filing charges against the defendant before a justice of the peace the following morning. So far as the record discloses, the defendant was not known to either of the highway patrolmen, and it is apparent that he would not have been apprehended on this occasion had it not been for his illegal operation of his automobile on that occasion.

There are other circumstances, also, which occurred which justified the arrest of defendant and seizure of the intoxicating liquor. We refer to the fact that part of the whisky was in plain sight of the officers as they approached defendant's car, and the balance of the whisky was disclosed to them by a free and voluntary act on the part of defendant in such a manner as to constitute a waiver on his part of his immunity from an unlawful search. See, Hammonds v. State, 73 Okla. Cr. 287, 120 P. 2d 376; Mitchell v. State, 73 Okla. Cr. 184, 119 P. 2d 99; Arnold v. State, 70 Okla. Cr. 203, 105 P. 2d 556; Camp v. State, 70 Okla. Cr. 68, 104 P. 2d 572; Brumley v. State, 69 Okla. Cr. 122, 100 P. 2d 465.

In Hammonds v. State, supra, it is stated:

"Peace officers have the right to arrest without a warrant all persons who are guilty of a violation of the criminal law in their presence.

"As an incident to such legal arrest the person and automobile of the offender may without a warrant be searched for contraband goods."

From all of the foregoing we have come to the conclusion that the defendant committed a crime in the presence of the officers and by reason thereof the officers had the right to arrest the defendant without a warrant, and as an incident to such legal arrest to search the automobile for contraband goods.

The judgment of the county court of Canadian county is accordingly affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.