MACK PRITCHETT v. STATE.
No. A-10232. Dec. 1, 1943.
(143 P. 2d 622.)

68

Frank Leslie, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., and O. C. Lassiter, Asst. Co. Atty., Tulsa County, both of Tulsa, for defendant in error.

BAREFOOT, J. The defendant, Mack Pritchett, was charged in the court of common pleas of Tulsa county with

the crime of unlawful possession of intoxicating liquor, towit: Ten pints of gin and 13 pints of whisky; was tried, convicted and sentenced to pay a fine of $50 and serve 30 days in the county jail. From this judgment and sentence he has appealed.

The contention for reversal of this case is based upon the fact that the court erred in refusing to sustain the motion to suppress the evidence. This motion, omitting the caption, is as follows:

"Comes now Mack Pritchett, defendant herein, and moves the court to suppress the evidence in said cause for the following reasons, towit:

"That the search of defendant's home was unlawful, illegal and unauthorized.

"That the officers conducting the raid and search did not have a search warrant for the premises raided and searched.

"That the defendant was not in the commission of any crime in the presence of the arresting officers.

"That the officers were on the premises unlawfully and in violation of the rights of this defendant."

The motion was heard by the court before the trial of the case. At the hearing, the defendant testified that the search was made of his home, or residence, outside the city limits of Tulsa, on the 27th day of February, 1941, and that no search warrant had been secured and none was served prior to the search.

The state then placed Roy Mogridge upon the stand. He testified that he was investigator for the Department of Public Safety. He admitted that the premises were searched without securing a search warrant, but testified that he had come to Tulsa at the suggestion of the police department, and that he, in company with the chief of the

raiding squad of the Tulsa police, two other police officers of his squad, and Cliff Goldsmith of the Department of Public Safety, went in two cars to the home or premises of the defendant. That he got out of the car and went in person to the door of defendant's home and knocked, and the defendant knew him and invited him in. That defendant and some other person whom witness did not know were sitting at a table. He said to the defendant: "Mack, I don't know if you will allow me but I would like to look over your place. I do not have a search warrant." Defendant answered: "You do not have to have a search warrant, just go ahead." That the witness then said: "You know about raids and know that you can demand a search warrant," and defendant said: "Yes, but you do not have to have any, just go ahead and search."

The defendant denied that any such conversation occurred. He testified that the witness came to the back door of his home, and defendant said: "Come in, Roy"; and that Mogridge said: "I am going to raid you." Defendant testified that he said: "I guess it will be all right." He testified that nothing was said about a search warrant.

The witness Roy Mogridge on cross-examination testified that he was in the city of Tulsa on the date of the search, in company with Cliff Goldsmith of the Department of Public Safety. That they intended to search for whisky, and left to go to defendant's place. That they did not know exactly where they were going, but they went directly to the home of defendant, and his was the only place they searched. That defendant lived just outside of the city limits of the city of Tulsa. That after receiving permission from the defendant, he went to the car where the other officers were upon the premises of defendant, that they immediately searched, and found the amount of liquor stated in the information. That it was hidden in barrels

buried in the chicken yard, and in boxes used for the purpose of conveying game chickens that were located on the premises .Some of the officers thought that a small amount of whisky was found in the house, but of this they were not certain. This was the testimony given by them at the trial.

The trial court, after hearing this evidence, overruled the motion to suppress, and the case proceeded to trial, with the results above stated.

Evidently the court's view in overruling the motion to suppress was based upon the idea that this question of fact should be submitted to the jury. The court did submit this issue to the jury, instructing them that if they found that the defendant had waived his right to have the issuance of a search warrant before his house could be searched, then it was not necessary for the officers to have one before making the search, but that if they believed he had not waived his right, then they should return a verdict of not guilty.

If this was the opinion of the court as to the law, then it was the wrong opinion. We have often held that the question of deciding the validity of a search warrant, or the necessity of having one, is a judicial question for the consideration and determination of the court, and therefore not a question for the jury. Sims v. State, 73 Okla. Cr. 321, 121 P. 2d 317; Phillips v. State, 34 Okla. Cr. 52, 244 P. 451; Ray v. State, 43 Okla. Cr. 1, 276 P. 785; Houchin v. State, 58 Okla. Cr. 329, 52 P. 2d 1085; Barfield v. State, 68 Okla. Cr. 455, 99 P. 2d 544.

Having come to the conclusion that it was the duty of the court to pass upon this question as a matter of law, did the court err in overruling the motion to suppress the evidence by reason of the search under the facts as they existed in this case?

72

In the case of Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135, 141, we reviewed at length the law of search warrants, and the manner of their issuance and service, reviewing many cases from this court, and other states. We discussed the question here involved. It is unnecessary to again review these decisions at length. In that opinion, we said:

"We are therefore of the opinion that defendant did not waive his constitutional right to have his premises searched without a valid search warrant when he said, 'That is fine and dandy, go right ahead,' but rather that this statement on his part had the meaning that he did not intend to resist the officer in the execution of the warrant under his official duty."

In that case we cited and quoted from a number of cases which discussed and decided this exact question. Smith v. State, 34 Okla. Cr. 434, 246 P. 1109; Herron v. State, 39 Okla. Cr. 346, 265 P. 147; Thomas v. State, 40 Okla. Cr. 98, 267 P. 278; Shockley v. State, 35 Okla. Cr. 437, 251 P. 514; Wilkerson v. State, 37 Okla. Cr. 43, 256 P. 63; Wilson v. State, 38 Okla. Cr. 409, 262 P. 501; United States v. Rembert, D. C., 284 F. 996 Salata v. United States, 6 Cir., 286 F. 125; Amos v. United States, 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; United States v. Kelih, D. C., 272 F. 484; Dukes v. United States, 4 Cir., 275 F. 142, 143; Meno v. State, 197 Ind. 16, 17, 164 N. E. 93; State v. Lock, 302 Mo. 400, 259 S. W. 116; Morton v. State, 136 Miss. 284, 101 So. 379; Smith v. State, 133 Miss. 730, 98 So. 344; People v. Reid, 315 Ill. 597, 146 N. E. 504; State v. Luna, Mo. App., 266 S. W. 755.

The cases above cited give so fully the reason for the rule announced, that we refrain from again quoting from them, except to call attention to the case of Smith v. State, supra [34 Okla. Cr. 434, 246 P. 1110], where it is stated:

"There is much conflict of authority as to what constitutes a waiver of defendant's constitutional rights in search and seizure cases. We think the rule supported by reason and the weight of authority requires the state, where objection is properly made, to show that defendant waived his constitutional rights by freely and voluntarily consenting to the search. The right of the citizen to occupy and enjoy his home, however mean or humble, free from arbitrary invasion and search, has for centuries been protected by every court in the English speaking world, from Magna Charta down to the present, and is embodied in every bill of rights defining the limits of governmental power in our own republic.

"The mere fact that a man is an officer, whether of high or low degree, gives him no more right than is possessed by the ordinary private citizen to enter and search the private premises of another for evidence of crime without a legal warrant procured for that purpose."

In the above case the defendant, on being told by the officer he had a search warrant, replied: "Go ahead and search; there is no whisky here." The court held that this did not constitute a waiver on her part of the right to have a search warrant issued before her premises were searched.

It is true that in some cases decided by this court, we have announced the rule of the right of a defendant to waive his constitutional right to have issued a search warrant.

It is also true that in the instant case the evidence of the officer who testified that defendant gave him permission to search is somewhat stronger than in some of the cases cited. Yet the fact remains that the evidence of the state reveals that the two highway officers who made this search came to Tulsa at the solicitation of the Tulsa police department for the purpose of making this search, because the premises were outside of the city limits. All of the

officers, most of whom were veteran officers, knew whose premises were to be searched. They knew it was the residence of the defendant, whom they knew. They knew its location. No attempt was made to search any other premises. Yet with this knowledge, they made no attempt or effort to secure a search warrant, as provided by the law and Constitution of this state, but went direct to the premises of defendant, and relied upon an oral waiver of his constitutional rights to justify the search.

The evidence of the state further reveals that after this search was made, the liquor found was placed in the car of Mr. Mogridge and was transferred to the vault of the Tulsa police department. A demand was made at the trial that the liquor be produced . This could not be done. Some of the officers testified that they were of the opinion that the same had been destroyed. Yet no order showing that it had been destroyed, or that a return had been made to any court showing that this liquor had been seized, as provided by the statutes of this state, was produced. The law plainly provides (section 2640, O. S. 1931, Tit. 37 O. S. A. 1941, § 89) :

"When a violation of any provision of this chapter, shall occur in the presence of any sheriff, constable, marshal, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the liquor, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging so unlawfully used, and to take the same immediately before the court or judge having jurisdiction in the premises, and there make complaint, under oath, charging the offense so committed, and he shall also make return, setting forth a particular description of the liquor and property seized, and of the place where the same was so seized, whereupon the court or judge shall issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of

law, and such property shall be held and a hearing and adjudication on said return had in like manner as if the seizure had been made under a warrant therefor."

There is no evidence that any effort was made to comply with this statute in this case. This provision of the statute is just as mandatory as is the statute which requires that a search warrant be procured before the home or residence of a citizen of this state shall be searched. The facts in the instant case are strong reasons for the enactment of the statute requiring the officer who seizes liquor without the issuance of a search warrant to be required to make a return thereof to the court having jurisdiction in the premises, and procure an order to hold the same until an adjudication is made by the court as to its final disposition.

The state in support of its contention of waiver, cites two cases decided by this court: Baker v. State, 35 Okla. Cr. 62, 248 P. 846, and Goad v. State, 60 Okla. Cr. 307, 64 P. 2d 932.

In the Baker case the opinion is very short. No authorities are cited or reviewed from this or any other jurisdiction. The court approved the submission of the question as to whether or not the defendant had waived his constitutional right to the jury. This is contrary, not only to the views hereinbefore expressed, but to the rule announced in many decisions of this court, as shown by the cases heretofore cited. The facts in that case are somewhat different from the facts in the instant case.

The Goad case was written by the writer of this opinion. The facts in that case are dissimilar to the facts here. The record there reveals that the officer had a search warrant and so informed the defendant, and on the trial stated that it was in the files. Attorneys for defendant

demanded that the state produce the warrant, which was overruled by the court, but counsel made no attempt to show that no warrant had been issued. The defendant testified that the officers told him they had a search warrant. He did not remember whether the officers "showed it to me or not." The court then announced the principle that a defendant could waive his constitutional rights for the issuance of a search warrant. If the officer had not had a search warrant in that case, we do not think the statements made by him would have justified the holding that it was a waiver of his constitutional rights, in view of the decisions heretofore cited.

In view of what has been said, and the cases above cited, we are clearly of the opinion that the officers should have procured a search warrant for the purpose of searching defendant's premises. And while it was a question of fact, it was the duty of the court to pass upon this question and decide as to the legality of the search, rather than to leave this question for the determination of the jury. The defendant may have been a persistent violator of the prohibition laws, but he was entitled to the same consideration under the law as any citizen of this state. The statute provides (section 2639, O. S. 1931, Tit. 37 O. S. A. 1941 § 88):

"No warrant shall be issued to search a private residence, occupied as such, unless it, or some part of it, is used as a store, shop, hotel, boarding house, or place for storage, or unless such residence is a place of public resort."

The officers were well aware of this law. The procuring of a search warrant protects not only the defendant, but the officer who makes the search. As was said in the Denton case, supra:

"With the enactment of the prohibition laws the state and federal governments have gone a long way by special statutory enactment in giving to officers the right of search and seizure, and have extended the same so that the home of the individual may be entered and searched. There were many years after the enactment of the Federal Constitution that no such legislation could have been passed the Federal Congress, nor could it have been enacted by the Legislatures of the several States. The people knew of the uncalled for searches and seizures of the British government against the citizens of this country, hence the enactment of the Fourth Amendment to the Constitution of the United States. But with the passing of time a few of our citizens seem to forget the sacredness of their home and fireside, and, in their eagerness to make money and in an effort to defeat the law, they have degraded their homes by bringing liquor and other instruments of crime therein for the purpose of using them in violation of the laws of this country, thereby hoping to receive protection through the sacred right of forbidding their homes to be searched, under the terms of the Constitution. Recognizing this evil on the part of the few, our governments, both State and Federal, have, as we stated before, gone a long way in permitting even the home to be searched, and especially where it is being used as a place of public resort, and for the storing of intoxicating liquor to be used for unlawful purposes. The rights of the many have been made to suffer for the sins of the few. The courts of our country, although they have ever been the guardian of the personal rights of the individual, have upheld these laws. They have also gone a long ways in holding constitutional these laws to the end that the criminal-minded of this country might not go unpunished. But these same courts, not only in this State, but in the nation, have uniformly held that the law which took away these sacred rights should be strictly construed, and that the officer who was given the power to issue the search warrant and to him who executed it should do so only in the manner and form as provided by the statute. We think this is entirely proper, yet enthusiasts often criticize the

78

court for doing the very thing that protects them in the most sacred principle vouched for in the Federal and State Constitutions."

Other assignments of error are presented in this case, but it is unnecessary to refer to them.

We, however, call attention to the fact that the court in this case, in instructing the jury, undertook to give a definition of "reasonable doubt." This court from its earliest decisions has advised against this practice. Douglas v. Territory, 1 Okla. Cr. 583, 98 P. 1023; Nelson v. State, 5 Okla. Cr. 368, 114 P. 1124; Soper v. State, 22 Okla. Cr. 27, 208 P. 1044; Choate v. State, 19 Okla. Cr. 169, 197 P. 1060; Burns v. State, 22 Okla. Cr. 151, 210 P. 302; Richard v. State, 24 Okla. Cr. 107, 216 P. 484.

No exception was taken to the giving of this instruction, but if there had been, it would have been necessary to reverse this case for that reason, because of the character of this instruction.

For the reasons hereinbefore stated, the judgment and sentence of the court of common pleas of Tulsa county is reversed and the case remanded for further proceedings.

JONES, P. J., and DOYLE, J., concur.