## EDWARD MARION GRAHAM v. STATE.

No. A-10774. Nov. 5, 1947.

(184 P. 2d 984.)

10

Tillman & Tillman, of Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, Edward Marion Graham, was charged with being in unlawful possession of 48-1/3 pints, 12 quarts, and 12-4/5 quarts of whisky. He was tried, convicted, and sentenced to 60 days at hard

labor in the county jail and assessed a fine of $200. and costs.

There are several assignments of error, the first of which is that the court erred in not sustaining the defendant's motion to suppress evidence. This proposition is based upon the contention that the search was unlawful, as it was not made with a search warrant nor incident to a lawful arrest. The facts and evidence in relation thereto are substantially as follows: The defendant's car was parked in front of Roscoe's Tavern, west of Drumright on the night of January 15, 1946. A highway patrol car, occupied by Officers Mansfield and Mount, drove up along side the defendant's automobile just before the defendant and his two companions came out of the tavern. The highway patrol had theretofore observed that the defendant's car bore a commercial car license plate. As the defendant and his companions were about to get into the automobile, Officer Mansfield approached him and asked him to whom the car belonged and asked him if he had a certificate of registration. The defendant said he owned it but that his wife had the title. For the remainder of the facts and evidence in relation to the search, we quote from the record. Edward Marion Graham, the defendant, testified in his motion to suppress, as follows, to wit:

"Q. Now, when did you first learn that there were any officers in the immediate vicinity of your car? A. I just came out of the night club and they were parked by it. Q. In the highway patrol car? A. Yes sir. * * * Q. Now, what was the first thing said by either of these officers to you? A. They asked me if the car was mine. Q. What did you tell them? A. I told them 'yes', and then they asked me to look into the trunk, and what I had in the trunk of my car, and I told them nothing, and they asked me to see, and I lifted the trunk lid and

showed them, and there was nothing there. Q. What was done or said then? A. He asked me how about looking in my car and I told him I didn't see that he had any right to, and he said he could impound my car for seventy-two hours for investigation. He said, which did I want him to do, impound my car for seventy-two hours or search it, and I told him it looked like they were running things and he went on and searched it. Q. Had he ever placed you under arrest? A. No. Q. Had he seen you violate a law? A. No."

On cross-examination, after testifying that his wife had the title to the car, the defendant gave further evidence as follows, to wit:

"Q. Did you tell him you supposed that you knew what he was looking for and you walked around the car and took a half pint of whisky out of the glove compartment of your car and handed it to him? A. No. Q. Did that happen? A. No. Q. That didn't happen? A. No. * * * Q. And then what happened after they opened the door? A. He jerked the seat out of the car—the back part of the seat. Q. Now, let's get that pint of whisky straightened out. Was there in evidence there a pint of whisky? A. The pint was in my glove compartment. Q. Who took it out of the glove compartment? A. Mr. Mansfield, as far as I know. Q. You didn't do it? A. No. Q. You didn't hand it to him? A. No. Q. You didn't tell him, 'If this is what you are looking for, here it is?' A. No. Q. That didn't happen at all? A. No. Q. Well, did Mr. Mansfield ask your permission to open that door? A. No. He asked but I told him that I didn't see that he had any right to. Q. He asked to? A. Yes, and I told him he didn't have any right to and then was when he told me he could impound the car for seventy-two hours or search it, and then I told him it looked like he was running things and then he opened it without my permission. Q. You told him it looked like he was running things? A. That is right. Q. And he opened the door? A. Yes."

Officer Mansfield, after testifying that he approached Graham and his companions with the inquiry as to whom the automobile belonged, gave further evidence as follows, to wit:

"* * * Mr. Graham said it was his, and I asked him then if he had his title with him, and he said 'No,' and I asked him who had his title and he said his wife had his title and his used car dealer certificate, that he was a used car dealer. I got out then and came around behind the car and I asked if he had anything in the back and he said 'No,' and he opened the turtle and threw it up and it was empty with exception of a tire and jack and maybe some tire tools. We went around on the other side and these other two boys had gotten out of the car and the door was open on the other side, and he opened the glove compartment and took out a half a pint of whisky and said, 'If that is what you are looking for, here it is,' and I asked him about searching the car and he said he didn't know why I should, and I told him that when he didn't have the title and no proof of ownership the car could be impounded until proper title was brought up to show who owned it and during that time we would get a warrant to search it if necessary, and he said if that was necessary to go ahead and search, and I pulled up this seat and dropped it back (here the whisky was found) and told him he was under arrest. * * *" (Parenthesis our own.)

On cross-examination, Officer Mansfield testified as follows:

"Q. Did you arrest him when he handed you that third pint? A. No, sir. Q. You didn't place him under arrest? A. No, sir. Q. Or give him any indication that he was under arrest at that time? A. Not so far as telling him, no. * * * Q. Now, you had no permission to go in that automobile? A. Any other than his. Q. What permission did he give you? A. When we discussed this title and the impounding of the car and I told him what

could happen, he says, 'In that case, why you are allowed to search the car.' "

It is pertinent to add, in this regard, that subsequent investigation disclosed that the tag on the defendant's automobile was a proper license and the fact of ownership was as he disclosed to the officers on the occasion in question.

Officer Mount's testimony is to the effect that he remained in the patrol car until after Mr. Graham was placed under arrest. His testimony is inconsistent and in conflict with that given by Officer Mansfield and is therefore of little value under the circumstances, except that no arrest was made until after the search.

Based upon the foregoing evidence, the defendant contends that the search and seizure was unlawful and in violation of his constitutional rights under the Fourth Amendment to the United States Constitution, which reads in part as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, * * *."

And, also, in violation of the Constitution of Oklahoma, art., 2, §30, of the Bill of Rights, which reads in part as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches or seizures shall not be violated; * * *."

These provisions, this court has held in numerous decisions, protect the individual in his person, his home, and his property, from invasion through unbridled and unrestrained executive or administrative will. Edwards v. State, 83 Okla. Cr. 340, 177 P. 2d 143; Gore v. State, 24 Okla. Cr. 394, 218 P. 545; Best v. State, 32 Okla.

Cr. 89, 240 P. 159; Keith v. State, 30 Okla. Cr. 168, 235 P. 631; State v. Coburn, 68 Okla. Cr. 67, 95 P. 2d 670. Likewise, in Edwards v. State, supra, this court said:

"Moreover, it has also been held that the protection against unlawful search and seizure extends to all equally, those justly suspected or accused, as well as to the innocent. Wallace v. State, 42 Okla. Cr. 143, 275 P. 354."

This constitutional inhibition does not prevent all searches and seizures but only those that are unreasonable and in violation of law. To prevent the abuse of the right to search and seizure, the foregoing provisions of the Constitution must be strictly construed. But, that does not mean that they should be so strictly construed as to thwart the reasonable and proper efforts of officers of the law to protect and prevent crime. However, to exercise the right of search and seizure, officers must conduct themselves in a manner supported by the law. These principles apply to searches made with or without a warrant and to automobiles as well as private dwellings. Edward v. State, supra; Perry v. State, 72 Okla. Cr. 149, 114 P. 2d 185; Lamb v. State, 59 Okla. Cr. 360, 60 P. 2d 219; Bowen v. State, 50 Okla. Cr. 36, 295 P. 623. In Edwards v. State, supra, this court said:

"One suspected of committing crime, under the law has a right to demand that the officers obtain a search warrant before a search is made of either his premises or his automobile. This constitutional immunity, however, is a personal privilege and may be waived. Short v. State, 48 Okla. Cr. 320, 290 P. 934; Cook v. State, 44 Okla. Cr. 226, 280 P. 626; Baker v. State, 35 Okla. Cr. 62, 248 P. 846; Gaines v. State, 28 Okla. Cr. 353, 230 P. 946; Boswell v. State, 26 Okla. Cr. 116, 222 P. 707; Hurst v. State, 25 Okla. Cr. 102, 219 P. 151."

To establish a waiver, however, in the same case just quoted, it was said:

"It is fundamental that a waiver must be proved by the party alleging it, 63 C. J. 309. This proof must be clear and convincing, that the waiver was a free and voluntary act, as was said by Judge Barefoot in Pritchett v. State, 78 Okla. Cr. 67, 143 P. 2d 622, and by Judge Jones, in Dawson v. State, 83 Okla. Cr. 263, 175 P. 2d 368."

The record herein discloses that this search and seizure was made without a search warrant. Moreover, it discloses that the search was not made incident to an arrest, based upon the commission of a felony. Therefore, the search and seizure could only be supported on the basis of being made as an incident to a lawful arrest for a misdemeanor committed in the presence of the officers or by voluntary waiver of the defendant's constitutional right to require a search warrant. Under the record as herein made, all parties agree that there was no arrest until after the liquor was seized. The record is clear that at no time did the officer attempt to make a lawful arrest for failure to comply with any provisions of the law, such as the defendant's failure to possess a certificate of registration. Neither did the officer seek to impound the automobile (all of which they might have done under Title 47, O. S. 1941 §22.23(e); and §22.4 and §357; and §366 of the Statute). It is clear in the court's mind that the officers abandoned the idea of making an arrest for failure to present a certificate of registration and any idea of impounding the automobile for failure to possess the said certificate until it became essential as an adjunctive instrument for the search and seizure. It is apparent that they believed the defendant's explanation of his inability to produce the same. If not, why then did they not arrest the defendant for his failure to present the certificate of registration? If not, why did they not impound the car, if

they thought the facts justified it? It is apparent that they were acting merely upon a suspicion that maybe he possessed whisky. It is likewise apparent that that was all they were after and that they were willing to make an unlawful search to satisfy their suspicions. This conclusion is substantiated by the fact that the officers made no arrest for failure to possess the registration certificate and no mention of their power to impound the automobile at that stage of the proceedings, but, still acting on the basis of suspicion, Officer Mansfield asked to see the inside of the trunk of the car. With this request, the defendant complied. Nothing being found there, and still acting upon suspicion, and not upon a lawful arrest, the officer asked for permission to search the car. This being refused, he then for the first time resorted to his power to impound the automobile, as a threat to obtain from the defendant an involuntary consent to search the car. It is therefore apparent that the only basis upon which this search and seizure could be sustained is that upon the ground of waiver. The sole question then is, "Does this record support a waiver by voluntary consent?" Do the facts in the case at bar constitute a waiver of the constitutional right to require a search warrant? The expression by the defendant, "It looks like you are running things, go ahead and search", after being faced with the threat of having his automobile impounded, in our opinion constitutes nothing more than an expression of intention not to resist the officer's exercise of authority in making the search and seizure. It was an acquiescence in regard to the supremacy of the law. It was an involuntary consent, obtained under threat of impounding defendant's car. Such a consent does not constitute a waiver, as recognized by this court. In Pritchett v. State, 78 Okla. Cr. 67, 143

P. 2d 622, the defendant said, "You do not have to have a search warrant, just go ahead." In Smith v. State, 34 Okla. Cr. 434, 246 P. 1109, the defendant said, "Go ahead and search, there is no whisky here." In both of the foregoing cases the court held:

Such a statement is not to be construed as an invitation to search but rather as a statement of the intention not to resist such search.

In Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135, the defendant's waiver was based upon the statement, "That's just fine and dandy, come right ahead", and in Perry v. State, supra, Judge Jones quoted from Evans v. State, 34 Okla. Cr. 173, 245 P. 912, wherein the court said:

"A private conveyance may not be searched on suspicion without a search warrant."

In Bowen v. State, supra, this court held:

"A search of an automobile without a search warrant and not as an incident of a legal arrest, not upon any probable cause of the commission of a felony, but upon a mere suspicion, is in violation of article 2, §30, State Const., and evidence obtained by such a search is inadmissible."

In Jones v. State, 82 Okla. Cr. 91, 166 P. 2d 443, this court held:

"Whether a search of or seizure from an automobile without a warrant is unreasonable, within the meaning of the constitutional provision forbidding unreasonable searches and seizures, is a judicial question to be determined in each case, viewing all facts and circumstances under which the search or seizure was made.

"A search of an automobile without a search warrant and not as an incident of a lawful arrest, and not on any probable cause of the commission of a felony,

but on mere suspicion, violates the constitutional provision forbidding unreasonable searches or seizures, and evidence obtained by such a search is inadmissible."

In the case at bar, it is clear that there was no warrant upon which to predicate the search and seizure and that the search and seizure was not incident to a lawful arrest. Notwithstanding the fact that the state seeks to support the seizure herein by the foregoing statutes, relative to the requirement of requiring the possession of the certificate of registration and the power to impound an automobile when the owner does not produce the same when request therefor is made by highway patrolmen. In this connection, we believe it was the intention of the Legislature that the statutes, sought to be relied upon by the state with reference to possession of certificate of registration and impounding of an automobile, were only a means of enforcing the motor vehicle act. It was not intended as a means or instrument of justification of an unlawful search and seizure, nor as a shield behind which officers can hide until they have explored or justified their suspicions. Before a search and seizure, of intoxicating liquor, can be predicated upon the aforesaid statutes, a good-faith arrest must be made. No such situation appears from the record herein. The motion to suppress should have been sustained. We need not consider the other assignments of error.

The case is therefore reversed and remanded, with directions that the defendant be discharged.

BAREFOOT, P. J., and JONES, J., concur.