[Crim. No. 3019.   Third Dist.   Feb. 15, 1960.]

THE PEOPLE, Respondent, v. DOMINIC STEVE CAVALLERO, Appellant.

Thomas W. Loris for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Defendant Dominic Steve Cavallero was charged by information with a violation of section 501 of the Vehicle Code (a felony), it being alleged that he "did willfully, unlawfully and feloniously drive a certain vehicle, to wit, an automobile, while under the influence of intoxicating liquor and in an unlawful manner, proximately causing bodily injury to Michael Errington, a human being." The jury returned the following verdict: "We, . . ., find the defendant, . . ., guilty of Violation of Section 502 of the California Vehicle Code, Driving While under the Influence of Liquor, a misdemeanor, a lesser offense included in that charged in the Information."

Defendant's motion for a new trial was denied, judgment was pronounced, and he has appealed from the judgment and from the order denying his motion for a new trial.

Appellant does not question the sufficiency of the evidence to support the judgment, but the principal ground upon which he relies for a reversal of the judgment and order is that a miscarriage of justice resulted from the admission into evidence of the blood-alcohol test; that the wrong done appellant was not cured by the subsequent striking out of said testimony and the court's admonition to the jury to disregard it.

Before discussing this contention we shall summarize the evidence as shown by the record.

Appellant testified that he spent the day assisting a friend with some construction work at the latter's cabin at Donner Lake, and that he had several glasses of beer with his lunch. Around 2 p.m. he had a couple of glasses of home-made burgundy wine. About 5 p.m. more wine was consumed and again the work was continued until about 7:30 p.m. when the men called it a day and ate their dinner. More wine was consumed with the meal. About 8:30 p.m. appellant left the cabin and proceeded over United States Highway 40 toward his home in Sacramento.

Thomas Haskell testified that just above Donner Lake appellant's car passed the car being driven by Haskell. Mr. Haskell followed appellant's car and observed that it was being driven in an erratic manner—weaving back and forth. On occasions, approaching vehicles had to veer off to the side of the road to avoid colliding with appellant's vehicle. Haskell testified: "Well, he drove all over the road and nearly hit several other cars that was coming the opposite direction, just weaving around all over the road, sometimes in the opposite side of the road, clear out into the dust of the shoulder of the

opposite side of the road. MR. BROYER: Q. Did you make any effort to do anything about it? A. Every time he drove across I would toot my horn; I thought he might be sleepy; I would toot my horn, he would pull back. Then I would try to crowd him and toot my horn so he might stop. Q. Was there any response from him? A. He would either drive faster or answer me by tooting his horn back. Q. Were there any cars from the opposite direction? A. Yes. Q. Were they automobiles or trucks? A. Both. Q. Could you observe any action of the vehicles passing in the opposite direction? A. Most of them veered off to the side in order to keep from colliding with him. Q. What did the trucks do? A. They would blow their horn and he would blow his horn back.''

Near Hampshire Rocks appellant's car swerved sideways and collided with another vehicle which was being driven by one Errington who had with him his wife and two children. They were all injured in the accident. Appellant was also severely injured. The highway patrol officer who investigated the accident found appellant sitting behind the steering wheel of his automobile. The officer testified that when he opened the door there was a strong odor of liquor. Appellant's eyes were blurry, as was his speech. In the opinion of the officer, based on his observations, appellant was under the influence of intoxicating liquor. A physician at the hospital where appellant was taken for emergency treatment also testified that he noticed a quite strong odor of alcohol on appellant's breath.

While in the hospital a sample of appellant's blood was taken. Traffic Officer McCallen testified: ''A. I asked Mr. Cavallero how much and how many drinks he had had, and what. At that time he answered, 'I have had a couple beers.' Q. Then what did you say back to him, leaving out your opinion? A. I said, 'Mr. Cavallero, I think you have had too many beers. I think you are intoxicated.' I then advised him that if it—had had only a couple of beers, I would like to get a blood sample from him at this time, and as it would benefit him as well as anyone if he had only had two beers, it would prove so in the blood alcohol. I told him that that is why I would like at this time to have the blood alcohol. And he said all right. He extended his arm.'' Over appellant's objection the chemist who analyzed the blood was permitted to testify that the blood-alcohol content was point 29.

After the People rested their case the court, outside of the presence of the jury, stated: ''After reviewing the matter last evening and reflecting about it, in relation to the blood sample

that was taken from the defendant, and the question of consent, I was going to announce to counsel that I would permit the defendant, if he wishes to do so, to take the stand and testify or to present any evidence that he might have on that question of voluntariness, so that to the end that if the Court concluded before the trial is completed and all the evidence is in, that it was not obtained by his consent, that I would—and would if I came to that conclusion—instruct the jury that they should disregard that.'' The court then stated that there were only two theories upon which the evidence of the blood-alcohol test would be admissible, whether it was an incident of an arrest or was voluntarily given. The district attorney then stated that the arrest was made in Sacramento some six weeks after the accident and that he was not claiming that the blood sample was taken as an incident of the arrest but would rely upon consent.

The court then recessed and upon reconvening counsel for appellant stated: ''. . . I have a request that, if I may, to have a special hearing on a particular point involving whether or not consent had been given so far as certain evidence is concerned, and may I proceed on behalf of the defendant outside the presence of the jury on these legal matters, . . .?'' The jury was excused and counsel for appellant stated: ''At this time I would like to call Mr. Cavallero for the special purpose of determining whether or not a proper foundation has been laid for the admission into evidence of the blood alcohol examination, and the evidence upon which I propose to base a motion to strike whatever evidence has been admitted.'' Appellant then testified and denied that he had ever consented to the taking of the blood sample; that he did not recall anyone asking his permission for the taking of a blood sample; and that he had no recollection of a blood sample being taken from him.

After the completion of this testimony by appellant the court ruled that the consent of appellant was not sufficiently established and that he would strike out the admitted evidence and instruct the jury to disregard it. Appellant's counsel made a motion for mistrial, which motion was denied by the court. The jury then returned to the courtroom and the court gave the following instruction:

''. . . [Y]ou are instructed that the Court, after taking further and additional evidence on the question, has decided as a matter of law that the defendant in this case did not consent, as that term is defined by law, to the taking of the blood

test from him. Therefore, you are instructed that you must disregard any and all testimony in reference to the taking of said blood tests and the results thereof, and in particular, in reference to any testimony as to the effect of such tests on the question of intoxication, and in relation thereto, completely disregard it and leave it out of your minds as though you had never heard it. I will give you a further written instruction on that at a later date. . . .''

Appellant, who was the only witness called by the defense, then testified as hereinbefore set forth, and denied that he was intoxicated or that he was driving in an erratic manner as testified to by the witness Haskell. He testified further that he was at all times '' [d]riving straight on my own side of the road''; that he never ran any other vehicles off of the road; that just before the collision with the Errington car appellant's car ''bobbled and went in the swerve.'' He stated, ''I was driving along there; all of a sudden my front end went like that, the tail end swung around, four or five car lengths from Errington's automobile; my automobile collided right in front of his, just like that, and that's all I remember.''

About 40 minutes after the jury had retired to deliberate on a verdict they made a request for further instructions. Upon being returned to the courtroom, the court asked if they had arrived at a verdict. The foreman replied, ''No sir, your Honor, we haven't. We had a point here which the Jury was not clear on, they would like to have cleared up, and I will read this to you: The point they wasn't clear on, it says, 'We, the Jury, find the defendant, Dominic Steve Cavallero, guilty of violation of Section 502 of the California Vehicle Code, driving while under the influence of liquor, a misdemeanor, a lesser offense included in that charged in the Information.' We was not sure about this charge, whether they could bring in the verdict on that charge, being as there was once people hurt in the accident. They would like to have that cleared up.'' The court then stated: ''You may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, if, in your judgment, the evidence supports such a verdict under my instructions. To enable you to apply the foregoing instruction, if your findings of fact require you to do so, I instruct you that the offense of Violation of Section 501 of which the defendant is charged in the Information necessarily includes the crime of Violation of Section 502 of the California Vehicle Code of the State of California, driving while under the influence of in-

toxicating liquor. California Vehicle Code Section 502 provides that it is unlawful for any person who is under the influence of intoxicating liquor to drive a vehicle upon any highway.'' The court then asked counsel for appellant and respondent if they wished any further instructions on the subject read and both replied that they did not. The jury thereafter returned a verdict finding appellant guilty of a violation of section 502 of the Vehicle Code.

Appellant first contends that it was error to admit the blood test into evidence over his objection and that this error was not cured by later striking the evidence and admonishing the jury to disregard it. At the time the evidence of the result of the blood-alcohol test was offered counsel for appellant objected upon the ground that it was not taken as an incident of a lawful arrest and that appellant's consent to the taking of the blood sample was not established. Thereupon, outside of the presence of the jury, the court stated that it was admissible because the evidence showed that appellant consented to the taking of the blood and overruled appellant's objection. Appellant's counsel then stated: ''Your Honor finds there is consent. On the other hand, if the Court deems it material, I can put Mr. Cavallero on the stand, and I can assure you he would deny he gave consent to the taking of this blood. At least, we have an issue of fact there which, of course, the Court would have to reconcile. I would make that offer of proof at this time in attacking the foundation for the admissibility, if the Court would permit.'' The court then stated: ''I think, in that connection, that all that is required is that the district attorney establish a foundation, which he has now done by the evidence, and, as I say, I have ruled on it, and I think I will adhere to my ruling.'' At the time the evidence was admitted there was evidence in the record which would support a finding that the blood sample was taken with the consent of appellant, and it was not clear whether or not the blood was taken as an incident to a lawful arrest. However, it developed later in the trial that the arrest occurred some six weeks after the accident and this ground was abandoned by the prosecution at the trial. Later, as hereinbefore stated, the appellant took the stand and denied consent. The court then ordered the evidence stricken and admonished the jury to disregard it.

We think that the court erred in admitting the result of the blood test into evidence before permitting appellant to testify on *voir dire* as to the issue of consent. A determination as to

the admissibility of the evidence should have been made by the trial judge before he permitted the jury to hear it. The judge should have determined outside the presence of the jury whether or not there was consent or whether or not the search was incidental to a lawful arrest. For as stated in *People* v. *Gorg*, 45 Cal.2d 776, at page 780 [291 P.2d 469]:

"Defendant contends preliminarily that the trial court erred in determining the question of the admissibility of this evidence outside the presence of the jury and in not submitting it to them. The procedure adopted by the trial court was proper, for the admissibility of the evidence presented a question of law for the court. (Code Civ. Proc., § 2102; *Steele* v. *United States*, 267 U.S. 505, 511 [45 S.Ct. 417, 69 L.Ed. 761]; *Boyer* v. *United States*, 92 F.2d 857, 858; *Marsh* v. *United States*, 29 F.2d 172, 173; *United States* v. *Jankowski*, 28 F.2d 800, 802; *Pritchett* v. *State*, 78 Okla. Crim. 67 [143 P.2d 622, 624-626]; *State* v. *Wills*, 91 W. Va. 659 [114 S.E. 261, 266, 24 A.L.R. 1398]; *contra, Compton* v. *State*, 148 Tex. Crim. 204 [186 S.W.2d 74, 76].) . . ."

As hereinbefore set forth after the People had rested their case, the court outside of the presence of the jury permitted appellant to testify as to the matter of consent and then ruled that appellant's consent to the taking of the blood had not been proven and thereafter ordered the evidence of the result of the blood test stricken and instructed the jury to disregard it.

Appellant contends most earnestly that the admission of the result of the blood test resulted in a miscarriage of justice and that it was the evidence of the blood test that resulted in his conviction. He argues that the other evidence of appellant's intoxication was weak and not credible. He argues further that prejudice is shown by the action of the jury in returning to the court during its deliberations and inquiring whether or not it could convict of section 502 of the Vehicle Code, a lesser included offense (appellant was charged with Veh. Code, § 501), in the face of uncontradicted evidence that injury occurred.

Appellant argues further that the effect of the wrongful admission of the taking of the blood sample and the analysis thereof was so damaging to appellant's case that the damaging effect of the admission of such testimony could not be lessened by the court's admonition to disregard it. ▪ What was said in *People* v. *Hardy*, 33 Cal.2d 52, at page 61 [198 P.2d 865], is apposite:

". . . Under ordinary circumstances the trial court is permitted to correct an error in admitting improper evidence by ordering it stricken from the record and admonishing the jury to disregard it, and the jury is presumed to obey the instruction. (*People* v. *Prather*, 134 Cal. 436, 439 [66 P. 589, 863]; *People* v. *Sourisseau*, 62 Cal.App.2d 917, 929 [145 P.2d 916].)

However, as was stated in *People* v. *McKelvey*, 85 Cal. App. 769, at page 771 [260 P. 397], 'It has also been held that in certain cases where the incompetent evidence goes to the main issue and where the proof of defendant's guilt is not clear and convincing, that the error in admitting the incompetent evidence cannot be cured by striking out and instructing the jury to disregard that evidence.' . . ."

While, as we have hereinbefore stated, the court erred in not determining on *voir dire* the issue of consent before permitting the introduction into evidence of the result of the blood test, we have reached the conclusion that in view of the admonition of the court and the other evidence in the record no reversible error resulted. Particularly is this so because of the plain and meaningful language of section 4½ of article VI of our state Constitution:

"No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

In *People* v. *Watson*, 46 Cal.2d 818, the court said at page 836 [299 P.2d 243]:

"Giving due consideration to the varying language heretofore employed in relating the constitutional amendment to the particular situations involved, it appears that the test generally applicable may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. Phrasing the test in this language avoids any complexity which may be said to result from the language employed in the double negative approach, and such phrasing seems to coincide with the affirmative language used in the constitutional provision."

And as stated in the very recent case of *Bridgman* v. *Safeway Stores, Inc.*, 53 Cal.2d 443, at page 450 [2 Cal.Rptr. 146, 348 P.2d 696]:

". . . No precise formula can be drawn for deciding whether an error in instructions has resulted in a miscarriage of justice. For this purpose the appellate court must review the entire record, including the evidence, and in each instance the determination whether the error requires a reversal depends upon all the circumstances of the particular case. (*Alarid* v. *Vanier*, 50 Cal.2d 617, 625 [327 P.2d 897]; *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 660-661 [320 P.2d 500].)"

Applying these rules to the instant case we are satisfied that the evidence, exclusive of the blood test, was so strong that the jury would have found appellant guilty without evidence of the results of the blood test. This evidence included the testimony of witness Haskell as to the erratic manner in which the defendant was driving prior to the accident, and of the fruitless efforts of Haskell to crowd him to the side of the highway in order to avoid an accident; the testimony of the highway patrolman who saw the defendant behind the wheel of his car after the accident and smelled a strong odor of alcohol on his breath, and who gave as his opinion that the defendant was intoxicated; the testimony of the doctor who examined and treated the defendant at the hospital; the manner in which the accident happened; and finally, defendant's admission as to the quantity of alcoholic beverages consumed by him prior to the accident. In addition to this it is also worthy of comment that the only witness called by appellant was himself and that none of the persons with whom he spent the afternoon and whose place he left when he started back to Sacramento testified.

We are not impressed with appellant's argument that the action of the jury in returning to the court during its deliberations and inquiring whether or not it could convict of section 502 of the Vehicle Code, a lesser included offense (appellant was charged with section 501 of the Vehicle Code), in the face of uncontradicted evidence that injury occurred shows prejudice. We believe that the jury entertained no doubt that appellant was driving an automobile while under the influence of intoxicating liquor, but because of his testimony that his car bobbled and went into a swerve just before the collision the jury may not have been convinced beyond a reasonable doubt that the accident was caused by the fact that appellant was

intoxicated rather than by a mechanical defect and therefore returned the lesser verdict.

For the reasons hereinbefore set forth, we conclude that the evidence abundantly supports the judgment, and that notwithstanding the error hereinbefore noted no miscarriage of justice has resulted.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 13, 1960.