W. W. BRUMLEY et al. v. STATE.

No. A-9696.  March 14, 1940.
(100 P. 2d 465.)

Hal Welch, of Ada, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, P. J. The information in this case charges that in Pontotoc county on or about the 9th day of February, 1939, W. W. Brumley and M. L. Krokrich did unlawfully convey and transport about 38 pints of whisky from a point unknown to another point, about one half mile west of the city limits of the city of Ada, on State Highway No. 12. A jury was waived by agreement of parties. The defendants filed a motion to suppress the evidence. It was agreed that after the evidence on the part of the state was introduced, the motion to suppress the evidence would be passed on by the court.

The state called two witnesses, Joe Porter and Jim Rogers.

At the close of the evidence for the state, and after argument on the motion to suppress the evidence, the motion was overruled, thereupon the defendants asked for a directed verdict in the form of separate demurrers to the evidence, which were overruled and exceptions reserved.

There was no testimony offered on the part of the defendants.

The court sentenced the defendant W. W. Brumley to pay a fine of $75 and imprisonment in the county jail for 30 days, and sentenced M. L. Krokrich to pay a fine of $50 and imprisonment in the county jail for 30 days, and that the defendants pay all costs in the amount of $39.40.

From the judgments they appealed by filing in this court on July 19, 1939, a petition in error, with case-made.

The testimony of the two officers shows that on the date alleged, between 8 and 9 o'clock p. m., Joe Porter, Jim Rogers and Allen Stanfield in executing a search warrant went to the Twin Oaks Tourist Camp, located about one-half mile west of the city of Ada, on State Highway No. 19, on the south side of the highway, which tourist camp was operated by the defendant, W. W. Brumley.

Joe Porter testified that while the search of the camp was in progress he was standing in front of the tourist camp, and saw the two defendants in a Ford coupe, going west; Krokrich was driving. Then he got in his car and followed them, caught up with them about a mile and a half or two miles west of the "Y" up there, and Brumley threw a sack of whisky out of their car; about four or five miles from town he passed their car, and they turned around and came back east; that he turned also and fol-

lowed them and Brumley threw another sack out a half a mile east from where they turned around; that he followed them back to town, and going by the Twin Oaks Tourist Camp, he picked up Jim Rogers and Officer Stanfield, and followed on with the siren on trying to stop them, and they would not stop until Jim Rogers shot the left rear tire of their car. Another shot hit a hub cap on their car. That they went to the defendants' car, arrested them and put them in the back seat, then drove back on Highway 19 and picked up the sacks containing broken and unbroken bottles of whisky. In the three sacks there were eleven pints of tax-paid whisky unbroken; that there were 38 altogether, counting the necks of the broken bottles.

He further testified that he saw the defendant Brumley throw two of the sacks out; that he knew the car and recognized the defendants when they drove past the tourist camp; that he would say that it was about five miles west of the tourist camp where they turned around; that when the first sack was thrown out whisky splashed on his car; that was about three quarters of a mile before they turned around.

Jim Rogers testified that he was standing in front of the tourist camp and a Ford V-8 drove by pretty fast and right behind Joe Porter drove up in his car, and with Mr. Stanfield he got in the car with him, and followed the Ford V-8 car to the "Y". It turned west on No. 12, and they turned and followed. Mr. Porter turned the siren on to stop them, they failed to stop, and witness shot down a tire to stop the car; they found the floor board of the car was wet, and smelled like liquor. They arrested the defendants and searched the car, but did not find any whisky. They put the defendants in the back seat of Porter's car, drove back and picked up three sacks on the

highway that contained 38 whisky bottles, all broken except eleven full pints of tax-paid whisky.

The errors assigned are that the trial court erred in overruling the motion to suppress the evidence, in refusing to strike all the evidence, and in overruling defendants' demurrers to the evidence at the close of the state's case.

Counsel for defendants in his brief states that:

"The search was commenced at the time the officer started in his car to overtake the defendants' car and stop it for the purpose of obtaining evidence of a violation of the prohibitory laws, and it was commenced wholly on suspicion, with only a faint hope of obtaining evidence. Being unlawful in its inception the entire search was illegal, and the evidence obtained thereby was inadmissible against the defendants."

Upon the record before us we think that the contention made is wholly without merit. An offense is committed or attempted "in the presence of an officer," within the meaning of the statute, providing that a peace officer may, without a warrant, arrest a person for a public offense committed, or attempted in his presence, where such officer is apprised by any of his senses that a misdemeanor is being committed by the person arrested prior to the arrest. Section 2780, Sts. 1931, 22 Okla. St. Ann. § 196.

Upon the undisputed facts the arrest of the defendants was lawful, and being under lawful arrest, the officers had the right, as an incident of that arrest, to search the car occupied by the defendants, after the officer had observed the sacks containing whisky thrown from the car occupied by the defendants.

In the case of McAdams v. State, 30 Okla. Cr. 207, 235 P. 241, this court held:

"Where peace officers, without a warrant, on suspicion merely, illegally attempted to arrest a person suspected of the commission of a misdemeanor (transporting whisky), and as a sequence to such attempted arrest the offense is actually committed in the presence of and to the certain knowledge of the officers, the offender, under the circumstances set out in the text, may be legally arrested without warrant for the offense so committed in the officers' presence."

In the opinion it is said:

"In this case, at the outset the defendant was merely suspected of having committed or being in the act of committing a misdemeanor, and the attempt to arrest the defendant on suspicion, without a warrant, was illegal. This court does not approve nor wish to seem to encourage peace officers in illegal practices, but here, after the initial illegal attempt to arrest proved futile, and the officers, as found by the jury, saw the defendant in the act of violating the law, they then acquired the right to make the arrest without a warrant. Under the circumstances here the legal and the illegal acts of the officers are separable, and it becomes the duty of this court to sustain the legal portion of the transaction, including the search and seizure incident to the legal arrest. A different question would arise if the evidence conclusively showed that the arrest was for a misdemeanor on suspicion merely and without a warrant, and therefore illegal; under those circumstances the things seized, incident to such illegal arrest, would not be admissible in evidence, if timely objections were made thereto."

And see Davis v. State, 60 Okla. Cr. 198, 63 P. 2d 112.

It follows from the foregoing the motion to suppress the evidence and defendants' demurrers to the evidence were properly overruled.

Finding no error in the record which in our opinion would justify this court in setting aside these convictions,

128

the judgments of the lower court should therefore be affirmed. It is so ordered.

BAREFOOT and JONES, JJ., concur.