GEORGE E. SIMONS v. STATE.

No. A-9628.   April 18, 1940.
(101 P. 2d 852.)

E. M. Carter and Joe S. Eaton, both of Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and L. A. Wallace, Co. Atty., of Okmulgee, for the State.

BAREFOOT, J. The defendant, George E. Simons, was charged in the district court of Okmulgee county with the crime of murder; was tried, convicted of manslaughter in the first degree, and the court assessed his punishment at four years in the penitentiary, and he has appealed.

This charge arose by reason of the killing of Dave Franke upon the public streets of Okmulgee, on the 3rd day of August, 1938. He was killed by being hit by an automobile driven by defendant.

The first assignment of error is that the court erred in refusing to strike and suppress the evidence of certain officers for the reason that the same was based upon an illegal search and seizure. For the consideration of this error it becomes necessary to review the evidence presented by the record.

At about 8 or 8:30 a. m., on the morning of August 3, 1938, the deceased, Dave Franke, was walking from his home to his place of business, and while crossing Eighth street at the intersection of Oklahoma avenue, he was struck by an automobile and was injured, and from the injuries received he died on the 13th day of August, 1938. At the time he was injured he was walking north, crossing Eighth street. At this intersection there is a large "stop" sign. Just as the deceased was attempting

to cross the street an oil truck drove up going east, and was in the act of stopping at the stop sign. The deceased passed in front of the truck and just as he did so he was struck by an automobile which came around the truck, going east at a speed of 40 to 45 miles an hour, and which said automobile made no stop at the stop sign, and did not stop after hitting the deceased, but sped on east at a high rate of speed, as the witnesses for the state say of approximately 40 or 45 miles an hour. The deceased was whirled around and thrown to the pavement, and from the effects of the injuries received died on the 13th day of August, 1938.

There were three eye-witnesses to the occurrence. We shall not encumber the record with a statement of the evidence of each of these witnesses. Some saw more than others, but the testimony of each is about the same, and was to the effect that the driver of the automobile which struck deceased made no attempt to stop at the stop sign where the accident occurred. That he passed the truck which came to a stop at the stop sign. That he was traveling at the rate of 40 to 45 miles an hour. That he made no attempt to check his speed, and that after striking deceased, he made no attempt to stop but sped on.

The evidence was that none of the eye-witnesses were able to identify the defendant as the driver of the car. However, at the time of striking the deceased a knob of the door of the automobile was broken off, and also a piece of the glass from the front door was broken. These were picked up by a boy who was present just after the collision, and were taken by him to the police station.

A deputy sheriff, J. J. Forbes, on the morning of the 3rd day of August, 1938, was going from his home

to the sheriff's office. He saw an automobile driving at a fast rate of speed and weaving on Eighth street. His attention was attracted by the manner in which the car was being driven, and he turned around and followed the same. The car was driven into a garage, and the witness saw defendant getting out of the same. He was drunk, and it was necessary for the witness to assist him into the house and put him to bed. He testified that he arrested him at that time for driving while drunk or for reckless driving, but left him at home on account of his condition, and proceeded to the office of the sheriff of Okmulgee county. When he arrived there he was informed of the collision in which Dave Franke was injured. He immediately went to the office of the police chief, and in company with Sheriff John Lenox, and Officers Albert Rhea, Johnny Hays and K. L. Alexander, proceeded to the home of defendant, and defendant was taken in charge, and taken to the county jail. That while they were there they made an examination of defendant's car, which was in an open garage, and compared the door knob that had been found at the scene of the accident and found that defendant's car had the door knob knocked off. They also returned to the city police headquarters after the defendant was in jail, and returned to his home with the piece of glass that had been picked up by the boy at the scene of the collision, and turned over to the officers. This glass was compared with the glass missing from defendant's car, and was found to fit the same. The officers asked the defendant's wife for permission to make the examination, and she suggested that they take the car to a garage for the purpose of dismantling the "wing glass", which they did. The evidence revealed that the officers at no time procured a search warrant before making the investigation and comparisons herein-

before stated, and this was the basis for the objection to the introduction of the evidence hereinbefore stated.

In the first place, it does not occur to us that this comparison and investigation by the officers, where a felony had been committed, could be construed as a search. The car was in an open garage. The defendant had been arrested by one of the deputy sheriffs, who was present at the time the comparison and investigation was made, and who had arrested defendant for the commission of a crime committed in his presence, either of drunken driving or reckless driving. He had permitted him to stay at his home temporarily, because of his drunken condition. There can be no question that under the holdings of this court, that an officer who arrests one for the commission of an offense has the right to search his person and immediate surroundings at the time of his arrest. Newton v. State, 61 Okla. Cr. 237, 71 P. 2d 122; Brumley v. State, 69 Okla. Cr. 122, 100 P. 2d 465; Washington v. State, 37 Okla. Cr. 415, 259 P. 150; Smith v. State, 52 Okla. Cr. 315, 4 P. 2d 1076. The officers did not know at the time of his arrest that defendant had committed the offense of murder. When he learned of this fact he in company with other officers returned to take custody of defendant, which he did, and the investigations and comparisons heretofore related were made. We certainly do not think it was necessary for the officers to be required to secure a search warrant before making this investigation and comparison as the facts here revealed. It would be just as reasonable to say that the officers who were called to the scene of a homicide could not make an investigation of the surroundings without the securing of a search warrant. Certainly this was not the intention of the law. There is another substantial reason why the introduction of this evidence was

not error. It was introduced for the purpose of establishing the identity of the defendant as the person who was driving the automobile which struck and killed the defendant. The eye-witnesses to the collision being unable to identify the defendant, this evidence was introduced for the purpose of identification. The defendant seemed to take the position that he was not driving the car at the time of the collision, but when he took the witness stand in his own behalf, he practically admitted that it was his car which struck deceased, and that he was driving the same. Under his own testimony the jury would have been amply justified in finding that he was the driver of the car which struck deceased and so injured him that he afterwards died. Under these circumstances it cannot be said that defendant suffered any injury by reason of the introduction of the evidence above stated. Rhea v. Territory, 3 Okla. Cr. 230, 105 P. 314; Perkins v. State, 35 Okla. Cr. 279, 250 P. 544, 49 A.L.R. 1129; Sands v. State, 61 Okla. Cr. 206, 67 P. 2d 62; Rogers v. State, 9 Okla. Cr. 277, 131 P. 941.

The last assignment of error is that the verdict of the jury is contrary to the law and the facts, and the court erred in overruling defendant's demurrer to the evidence, and in refusing his requested instruction for a verdict of not guilty.

From the evidence heretofore stated, it will be readily seen that the court did not err as above contended. The contention that because the jury refused to convict defendant of murder and only convicted him of manslaughter, for this reason this eliminated the question of defendant being intoxicated at the time of this tragedy, cannot be conceded. The jury would have been justified under the facts in finding the defendant guilty of murder, but as jurors often do they dealt with mercy and

gave him the lower sentence of manslaughter. The uncontradicted testimony in this case shows that defendant was not only under the influence of liquor at the time of striking deceased, but that he was drunk. The defendant's own evidence fully sustains this statement. He testified that the night before this tragedy he went down town to a resort and there met a friend, and they drank several bottles of beer; that they then went to this party's house for the purpose of drinking some gin highballs. He said:

"A. Well, we drank quite a lot of gin. Ben had quite a lot there in the ice box and I took what was left in this pint bottle home with me, put in my pocket and told him I wanted it for a drink in the morning. * * * A. Yes, sir, we were drinking quite a lot."

Before he left for home they agreed to go to Tulsa the next morning, and defendant went home about 11 o'clock. He got up in the morning and went to a resort and drank two bottles of beer. He then went to his friend's house, and he was too sick to go to Tulsa, and his friend told him, "I would like to have some beer", and defendant asked him if he had any money, and he said, "No, but I have got plenty of gin left", and defendant said, "You furnish the gin and I will furnish the beer." Defendant then went to a restaurant and bought five bottles of beer, and returned to his friend's home, and "drank some beer, and I drank some gin and I decided if he was not going to Tulsa and I was feeling this gin and I decided I had better go home." It was in this condition that defendant found himself just prior to this tragedy. He further testified: "I came down Alabama and I was traveling pretty fast." He came up behind the truck that was slowing down for the stop sign. Instead of stopping behind the truck he "whipped around" the truck and "beat it on by," running the stop

sign which he knew was there, and inflicted fatal injuries upon deceased, who had already passed in front of the truck and had already reached a point north of the stop sign and about the middle of Eighth street. His only defense for his action was that he did not see the deceased, and never even knew that his car had struck him, although the force of the impact was such that a knob was torn from his car door and the "wing glass" was broken, and these parts were left upon the streets. The defendant did not stop but drove away at a fast rate of speed estimated at from 40 to 50 miles an hour by those who witnessed the occurrence. He was immediately pursued by Officer Forbes, who found him in a drunken condition getting out of his car at his home.

The defendant further testified:

"A. * * * I thought he got me for driving drinking and I talked a little bit and I was getting kind of under then from drinking this stuff. It was working on me. He took me in the house and told me to go and go to bed or something like that, maybe put me to bed—I don't remember. * * * Q. Were you in the habit of going on sprees? A. Yes, sir, I have. Q. How long have you been in that habit? A. Well, I don't make a habit of it, just occasionally get out with a bunch and get too drunk."

Not only was defendant guilty of driving while under the influence of intoxicating liquor, as provided by Oklahoma Statutes 1931, section 10324, O. S. A., title 47, § 93, but he was also guilty of a violation of section 14, chapter 113, Session Laws 1933, O. S. A., title 47, § 92, which is known as the "negligent driving statute", and which constitutes a misdemeanor. The court properly instructed the jury as to the law in accordance with the provisions of this section.

This is but another of those tragedies which arise when one so far forgets himself as to drive an automobile while under the influence of intoxicating liquor. The deceased was a friend of the defendant. He stated: "I wouldn't harm a hair on that boy's head." His statement when told that the deceased could not live was that, "I wish it had been me instead of Dave Franke." His good wife and two small children must help him pay the penalty. They shall suffer for the "sins of the father." She had used her good efforts to keep him from going on drunken sprees. She, like the good wives and mothers of old, will not desert him in times of trouble. The signs often seen upon the highways of this state should be observed: "If you drink, don't drive; If you drive, don't drink." May the vindication of the law be a lesson to him and to others.

The trial court in his instructions was very fair and protected the rights of the defendant. Not even an exception was taken.

Finding no error in the record, the judgment of the district court of Okmulgee county is affirmed.

DOYLE, P. J., and JONES, J., concur.