## O. L. CAMP v. STATE.

No. A-9665.   July 11, 1940.
(104 P. 2d 572.)

Mathers & Mathers, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant O. L. Camp was charged by information in the district court of Oklahoma county on August 30, 1938, with the offense of receiving stolen property; was tried, convicted, and his punishment fixed at a fine of $200, and he has appealed to this court.

The state's evidence, in substance, is that on July 15, 1938, eight two-pound chickens, dressed and with the legs cut off below the knee joints, which were wrapped in white paper and put in a brown sack with "Dinette" written on it in red pencil, were taken from the delivery truck of the Walnut Street Produce Company. The driver of the truck later identified the chickens taken from the defendant's wife as being the chickens that were stolen from his truck; but the chickens were in a different sack.

Officers McLennen and Acord saw Hershel Bowers, a narcotics addict who had served four penitentiary sentences for larceny, receiving stolen property and forgery, and who was under observation by the police officers of Oklahoma City, go into the defendant's place of business with a large bundle under his arm. Officers Harbolt and Butler joined McLennen and Acord and some 15 or 20 minutes later saw Mrs. Camp drive up in front of the defendant's shop. The defendant put in the car a package that looked similar to the one carried by Bowers. Harbolt and Butler followed the woman when she drove away; stopped her; asked permission to examine the package, to which she consented, according to the testimony. The package contained eight two-pound chickens. Mrs. Camp was taken to the police station and detained for a time.

Butler and Tom Guest then went to the defendant's store and asked defendant if he had bought any chickens that day, which defendant positively denied; however, he stated that a man (describing Bowers) had tried to sell him some chickens.

Bowers, a narcotics addict and habitual thief, testified that he knew the chickens were stolen and told the defendant that they were when the defendant offered to buy them from him for $2.50. Bowers received only part of

the $2.50 at that time. He was immediately arrested, fined, and conIfined in jail on a charge of receiving stolen goods. After he had served his jail term, he returned to the defendant to collect the rest of the $2.50. Defendant took him to his attorney's office. Bowers states that the defendant told his attorney that Bowers had made no statement and that the defendant could get a friend of his in the produce business to sign a ticket showing that he bought the chickens.

The defendant, who at the time had a case pending in this court for receiving stolen goods (Camp v. State, 66 Okla. Cr. 20, 89 P. 2d 378, affirmed) and had paid a fine for distributing obscene literature, testified that he went to the public market with his cousin, Bertha Hicks, bought the chickens, and had them dressed at the Standard. Bertha Hicks supported his testimony. O. B. Owens of the A & A Produce Company said that he made out the bill for the chickens the defendant bought on July 15, 1938. Milton Byars, an employee of Owens, stated that he remembered the defendant buying the chickens that morning.

Mrs. Camp stated that she did not invite the officers to get into her car; made no statement as to whether or not she gave them permission to examine the package; but stated that they ordered her to drive to the police station.

Sam Massey testified that he worked in Camp's store. He remembered that Camp went to the market and brought back some chickens; that a man was in there trying to sell Camp some chickens; that Camp would not buy them.

The defendant's chief contention is that the court erred in permitting certain police officers to testify as to their search of the automobile of the defendant's wife and as to the chickens found therein, over the objection of

the defendant, as the same was an unlawful search and seizure in violation of the constitutional rights of the defendant.

It is stated in Hargus v. State, 58 Okla. Cr. 301, 54 P. 2d 211, 212:

"For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed."

Mrs. Camp had certainly come under the observation of the officers, and there was sufficient reason to believe that a crime had been or was about to be committed. The officers were justified in stopping her and making inquiries.

Officer Harbolt testified that Mrs. Camp gave him permission to examine the package. This testimony is uncontradicted.

It has been held in Hurst v. State, 25 Okla. Cr. 102, 219 P. 151, and in Gaines v. State, 28 Okla. Cr. 353, 230 P. 946, that the right to immunity from a search and seizure without a search warrant may be waived.

No unlawful search and seizure has been shown, and the testimony complained of was admissible.

There is a conflict in the testimony, but there is ample evidence in the record to sustain the conviction.

We have held:

"Where the evidence and reasonable and logical inferences and deductions to be drawn from it are sufficient to convince the jury beyond a reasonable doubt of the guilt of the defendant, this court will not disturb the verdict for insufficiency." Hensley v. State, 69 Okla. Cr. 199, 101 P. 2d

279. Pickett v. State, 35 Okla. Cr. 60, 248 P. 352; Clemmer v. State, 56 Okla. Cr. 354, 40 P. 2d 37; Goodnight v. State, 62 Okla. Cr. 382, 71 P. 2d 789.

The other errors assigned to have been made by the court are without merit, and this cause is accordingly affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.