## WILEY KING v. STATE.

No. A-9905.   Jan. 28, 1942.

(121 P. 2d 1017.)

E. W. Snoddy and L. Z. Lasley, both of Alva, for defendant.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and H. L. Gasaway, Co. Atty., of Fairview, for the State.

BAREFOOT, P. J.  Defendant was charged in the district court of Major county with the crime of operating a motor vehicle while under the influence of intoxicating liquor, was tried, convicted and his punishment assessed at a fine of $500.  From such judgment and sentence he has appealed.

For reversal of this case it is contended:

"(1)   That the purported information is demurrable.

"(2)   The state's evidence was insufficient.

"(3)   State's evidence was illegally obtained.

"(4)   The instructions do not embody the law of the case.

"(5)   The verdict of the jury is unreasonable, and shows that the jury in said cause was prejudiced and biased."

In support of the first contention it is urged that the information alleged the defendant operated a motor vehicle while intoxicated on a "certain highway", and claims that it should have alleged on a "public highway." The information alleged:

"That the said Wiley E. King, a person then and there being in the county of Major and the State of Oklahoma, on or about the 6th day of August, 1939, did then and there willfully, wrongfully, unlawfully, knowingly and feloniously operate and drive a certain motor vehicle, to wit: a 1939 Ford Coupe, said motor vehicle being propelled by gasoline, while under the influence of intoxicating liquor on a certain highway within the county of Major, to wit: the street of Broadway in the city of Fair-

view and the county of Major, and on streets adjacent thereto, contrary to the form of the statutes, in such cases made and provided and against the peace and dignity of the state."

It is based upon Oklahoma Statutes 1931, section 10324, O. S. A. Title 47, § 93, which is as follows:

"It shall be unlawful for any person who is under the influence of intoxicating liquor, or who is a habitual user of narcotic drugs, and the having on or about one's person or in said vehicle of said intoxicating liquor is prima facie evidence of a violation of this Act, to operate or drive a motor vehicle on any highway within this State, as defined in Section 1, of this Act, and any person violating the provisions of this section shall be deemed guilty of a felony and shall be punished by imprisonment in the penitentiary not more than one year, or by fine of not more than Two Thousand ($2,000.00) Dollars, or by both imprisonment and fine."

This statute has been amended, Session Laws 1941, Title 47, chapter 4, sec. 1, p. 199, and now makes the first offense under its terms a misdemeanor punishable by a fine of not to exceed $500 or one year in jail, or both such fine and imprisonment, and the second offense is a felony and punishment may be assessed at a term of not to exceed two years in the penitentiary or a fine of not to exceed $1,000, or both such fine and imprisonment. This case was filed and tried under the original statute.

It will be noted that the information described the highway as "the street of Broadway in the city of Fairview and the county of Major, and on streets adjacent thereto." We think that this allegation is sufficient to charge that it was such a highway as contemplated by the statute. We think the court would probably take judicial knowledge that the streets of a city of the state

were public highways. But aside from this question, Oklahoma Statutes 1931, section 10324, O. S. A., Title 47, sec. 93, was adopted as section 3, p. 22, ch. 16, Session Laws 1923. It will be noted that in the body of the section the reference is to "any highway within this state, as defined in section 1, of this act." Section 1 of said act appears as section 10322, Okla. Stats. 1931, O. S. A. Title 47, sec. 91, and in subdivision 3 of said section a highway is defined as follows:

" 'Highway' shall mean to include any thoroughfare, highway, county road, state highway or state road, public street, avenue, public park, driveway, public square or place, bridge, viaduct, trestle or any other thoroughfare or structure, public or private, designed, intended or used by or for the general public for travel or traffic or the passage of vehicles, within the State of Oklahoma."

From the above statement we are of the opinion that the allegations of the information were sufficient as against a general demurrer.

It is next contended that the evidence was insufficient to sustain the verdict. It is unnecessary to lengthen this opinion by a discussion of this evidence. The evidence offered by the state was amply sufficient to sustain the verdict that defendant was not only under the influence of intoxicating liquor, but that he was drunk, and that he was driving in a reckless manner upon the streets of Fairview on Sunday, August 6, 1939. This evidence was positive on the part of Frank Ross, state highway patrolman who arrested defendant, and E. W. Evans, the police officer, and the sheriff of Major county. Sheriff Wiley testified that defendant was drunk when he was brought to the jail, and he testified to specific acts and conduct which showed his condition. Patrolman Ross testified as follows:

"A. Well he was unsteady, his eyes were glassy, his clothing was disarranged, and he had the smell of alcohol on his breath and he was squirming around like he might cause some trouble * * *. Anyway his motions were back and forth and his statements were such that it caused me to put the handcuffs on him to keep him from causing any trouble and I put him in the patrol car; the other folks got out of the car and two of the other folks were in a very drunken condition and I also took them in custody and I looked inside the car of Wiley King and underneath the seat—."

And Sheriff Wiley testified as follows:

"A. I would say he was staggering drunk. * * * Q. What were his actions when you were putting him in jail? A. About the same, or a little worse. The more we tried to do with him the worse things got. * * * A. He talked like a man—any drunk man would, sort of crazy like, on subjects you didn't want to talk about. * * * A. His actions were better after I locked him in the cell than they were just before I locked him in the cage to start with. Q. What were his actions then? A. He tried to tear up all the furniture we had."

Defendant produced several witnesses who testified that they had seen defendant's wife driving the car and not defendant. This evidence was not as direct and positive as that of the state. However, this was a matter for the consideration of the jury, and as has often been said by this court, the jury is the exclusive judge of the evidence and the credibility of the witnesses. Drennan v. State, 69 Okla. Cr. 348, 102 P. 2d 952; Marks v. State, 69 Okla. Cr. 330, 102 P. 2d 955.

The contention that the state's evidence was illegally obtained is based upon the fact that no search warrant was had by the officers when the liquor was found in defendant's car. The evidence of witnesses both for the state and defendant were to the effect that defendant was

driving in a reckless and careless manner upon the streets of the city of Fairview. The highway officer chased him around different blocks of the city. At one corner he was traveling so fast that his automobile almost turned over. When stopped by the officers, he again started his car, and they had to chase him further before stopping him. They arrested him for reckless driving before his car was looked into by the officer. Under these circumstances, defendant was committing a misdemeanor in the presence of the officer and was subject to arrest without the necessity of a warrant, and after he was legally under arrest the officer had the right to search his person and immediate surroundings without the necessity of securing a search warrant. Smith v. State, 52 Okla. Cr. 315, 4 P. 2d 1076; Skinner v. State, 65 Okla. Cr. 371, 87 P. 2d 341; Barfield v. State, 68 Okla. Cr. 455, 99 P. 2d 544; Brumley v. State, 69 Okla. Cr. 122, 100 P. 2d 465; Simons v. State, 69 Okla. Cr. 265, 101 P. 2d 852; Tacker v. State, 72 Okla. Cr. 72, 113 P. 2d 394; Mitchell v. State, 73 Okla. Cr. 184, 119 P. 2d 99; Sims v. State, 73 Okla. Cr. 321, 121 P. 2d 317.

Defendant next complains of instruction No. 6, which attempted to define the term "under the influence of intoxicating liquor." The instruction given was as follows:

"You are instructed that when any person, from the use of intoxicating liquors, has affected his reason or his faculties, to any extent, or has rendered himself incoherent of speech, or has caused himself to lose control, in any manner, or to any extent, of the actions or motions of his body, such person, in contemplation of the law, is under the influence of intoxicating liquor."

It may be admitted that this instruction is not a model one, yet we do not find anything therein which would prejudice the defendant. In the case of Luellen v. State, 64 Okla. Cr. 382, 81 P. 2d 323, we have reviewed

410

the cases touching upon this question and have set forth a definition of this term which occurs to us as being fair to both the state and the defendant. It gives the jury an opportunity to come to a right conclusion under the facts in each individual case as to whether defendant was under the influence of intoxicating liquor at the time charged. Other definitions in different terms may be sufficient. The definition in the instant case conveyed the thought in different terms. It in no way prejudiced the rights of the defendant.

The last contention of defendant that the verdict of the jury is unreasonable has reference to the penalty being excessive. As a result of defendant's arrest in this case and in which he was charged with the crime of driving a motor vehicle while under the influence of intoxicating liquor, he was also charged by the county attorney with an offense growing out of this same transaction, i. e., with the crime of unlawful transportation of intoxicating liquor and as a second offender. Oklahoma Statutes 1931, section 2632, O. S. A. Title 37, Section 12. This case was also tried and defendant was convicted and sentenced to serve a term of one year in the penitentiary and pay a fine of $500. This case has been appealed to this court and is now pending here for consideration. As above stated, the Legislature of 1941 and since this crime was committed have seen fit to lower the penalty in cases of this character and to make the first offense a misdemeanor. Taking all the facts into consideration, we have come to the conclusion that justice would be best subserved in this case by reducing the punishment from a fine $500 to $100 and costs, and as so modified, the judgment and sentence of the district court of Major county is affirmed.

JONES and DOYLE, JJ., concur.