E. H. CLARK v. STATE.

No. A-10294. June 14, 1944.

(149 P. 2d 994.)

424

 .

Raymond A. Trapp, of Blackwell, Tom L. Irby, of Ponca City, and Bruce B. Potter, of Blackwell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, Asst. Atty. Gen., and Roy E. Grantham, Co. Atty., of Newkirk, for defendant in error.

BAREFOOT, J. Defendant, E. H. Clark, was charged in the district court of Kay county with the crime of larceny of an automobile, was tried, convicted and sentenced to serve a term of six years in the State Penitentiary, and has appealed.

In his brief defendant presents two propositions for reversal of this case:

"First Proposition. All evidence obtained by unlawful and unreasonable search and seizure is inadmissible in the trial of an accused.

"Second proposition. The taking of an automobile for the purpose of taking tires and accessories therefrom, but without intent to permanently deprive the owner of

the automobile, does not constitute the crime of larceny of an automobile."

Consideration of the first proposition necessitates a short statement of the facts.

Defendant was charged with the larceny of an automobile from the possession of R. A. Parker, in Ponca City, Kay county, on the night of July 15, 1941, the same being the property of Laura M. Parker, the mother of R. A. Parker. On the night of July 16th, or early morning of the 17th, this car was found on the side road about 60 miles from Ponca City, stripped of wheels, tires, heater, radio, seat covers and other accessories. On the night of July 16th four farmers in Pawnee county were returning to their homes and saw two automobiles that had left the main highway, and were stopped about a mile and a quarter from the road. These cars attracted their attention. Without giving unnecessary details, their testimony was that they observed that one of the cars was being stripped, and the lights of the other were being used in this work. They saw a man and a woman at the cars. The farmers drove on past the cars, and two of them secreted themselves near a bridge, and when the man and woman left the scene, secured the number of the car they were driving, which was 8.3766. They then notified Sheriff Ray Owens of Pawnee county, who immediately went to the scene, located and inspected the stripped car, then went to Ponca City for the purpose of making an investigation. There he found that the car had been stolen from the streets of Ponca City on the night of July 15th, and that the tag, No. 8-3766 on the car that was seen leaving the scene, had been issued to E. H. Clark, 500 McFadden Drive, Ponca City. Sheriff Owens, in company with Captain Joe Donahoe and another police officer of Ponca City, went to the above address on the night of July 17th for

the purpose of investigation. With reference to this, the evidence of Captain Donahoe, Sheriff Owens and the policeman was that Captain Donahoe knocked at the door and the wife of the defendant answered. He asked to see Mr. Clark, and he came to the door. Captain Donahoe asked him what kind of a car he had, and he told him a '39 Ford. He then asked him what the license number was. Defendant hesitated, and when asked the second time, he told him it was 8-3766, the same number as that of the car seen to leave the scene where the car had been stripped. Captain Donahoe then said to the defendant, "I would like to see the car." Reed Wittmer, the police officer who accompanied Sheriff Owens and Captain Donahoe, testified: "He told him he would like to see the car. He asked him if it was there, and he said it was in the garage. He told him he would like to see it. He hesitated a little bit like— and then he said, 'All right,' but he said he didn't have the keys, he started to take him around the house to the garage, and he said he would have to go through the house and unlock it from the inside." The officers went direct to the front of the garage, and the defendant went back into the house, and opened the garage doors from the inside. They immediately saw two wheels and tires on the left side of the garage, one at the right and two against the wall, and Officer Donahoe asked the defendant twice where he got them. He made no reply. Officer Wittmer testified: "Well, he asked him where he got the tires and he didn't answer, didn't say anything he just stood there blank, and he said, 'We will have to take you' and he still didn't say anything, he never replied, we went ahead and looked in the car."

The defendant and his wife were both arrested and taken to police headquarters. Defendant made a statement in the presence of the officers admitting taking the

car; that he and his wife stripped it as hereinbefore stated; that when the car was stolen on the night of July 15th, he took it to his garage and kept it there until the night of July 16th, then drove it to the place where it was found; that his wife accompanied him in his car, and that after stripping the car, they returned home in his car.

It is upon this testimony, which is a fair statement of the evidence, that defendant contends the search of his garage was unlawful, for the reason that the officers did not have a search warrant at the time. It is contended by the state that defendant, after the officers arrived at his residence, voluntarily gave his consent for them to examine the garage, and thereby waived any right for the issuance of a search warrant.

Defendant in his brief relies upon the case of Smith v. State, 34 Okla. Cr. 434, 246 P. 1109, and the federal case of United States v. Rembert, D. C., 284 F. 996, as authority to sustain his contention. A careful reading of these cases will at once reveal that they do not sustain this contention. In the first place, the Smith case was on charging the unlawful possession of one and a half pints of whisky. The place of business of the defendant was searched, and also her living rooms. No intoxicating liquor was found on the premises, but three pop bottles containing whisky were found among a stock of pop cases and empty bottles behind the building. The officers at the time had a search warrant to search the premises, but the court found that it was obtained on information and belief, and the state then contended that defendant had waived her right for the necessity of a search warrant by saying, "Go ahead and search. There is no whisky here." The search warrant was a "John Doe" warrant, and did not contain the name of defendant. Under the circumstances above stated, the court held that defendant had not waived her consti-

tutional right to have a valid search warrant for the purpose of searching her premises. Under facts similar to this, we have often held that the right of defendant was not waived. Herron v. State, 39 Okla. Cr. 346, 265 P. 147; Thomas v. State, 40 Okla. Cr. 98, 267 P. 278; Shockley v. State, 35 Okla. Cr. 437, 251 P. 514; Mullins v. State, 75 Okla. Cr. 417, 133 P. 2d 239; Wilkerson v. State, 37 Okla. Cr. 43, 256 P. 63; Denton v. State, 62 Okla. Cr. 8, 70 P. 2d 135; Wilson v. State, 38 Okla. Cr. 409, 262 P. 501. In each of these cases it will be noted that the officer informed the defendant of his having a search warrant, and of his intention to search his premises, and that the statement of defendant was held not to be an invitation to search his premises, but rather that he did not intend to resist search when informed that the officer had a warrant, and intended to search. In all of these cases it will also be noted that defendants were charged with a misdemeanor.

The facts in the Smith Case are not comparable with the facts in the instant case. There the charge was a misdemeanor, a violation of the prohibition law. Here the defendant was suspected of having committed a felony, and the officers had strong, reasonable circumstances to believe defendant had committed the felony. There the officers had a "John Doe" search warrant, which was illegal. Here the officers did not have a search warrant, but were merely making an investigation of a felony with strong evidence to support it. At the time of going to defendant's premises, there was no intent to search the same, and officers only asked the defendant the kind of automobile he owned. Upon answering, he was told by the officer that he would like to see the same, and his reply was, "All right." He voluntarily opened the doors to his garage, and permitted the officers to enter, and upon seeing certain property therein, defendant was immedi-

ately placed under arrest. Under this state of facts, can it be said that the search of defendant's garage was illegal and void to the extent that the property found therein could not be introduced in evidence? The defendant, if he had seen fit to do so, could have demanded of the officers that they procure a search warrant. This would have given them an opportunity to do so, but instead of this, he told them it would be "all right" to look at the car in the garage, and he voluntarily went into his house and away from the officers, and opened the garage doors from the inside and admitted them. It certainly occurs to us that under this state of facts, defendant waived any right he had to require a search warrant before permitting the officers to examine the car in the garage. It is contended that because the officers were in uniform, and had badges and were already on defendant's premises, that his reason for not objecting was that he knew it would be useless. In answer to this it may be said that he made no objection, but agreed that it would be "all right," and opened the garage doors. It is the testimony of the officers, and admitted by the defendant, that the officers did not intend to search the premises at the time of going thereon. It was only after the defendant revealed that he owned a Ford car, and that it bore the license tag number of the car which officers knew to be that of the car seen leaving the scene of the stripped car. The argument that defendant was not placed under arrest until after the garage was opened and the wheels and tires were seen by the officers, is very technical. It is true that the officers did not say, "You are under arrest" until at that time, but no doubt if defendant had made any attempt to escape he would have been detained by the officers although they had not made open declaration of his arrest.

In defendant's brief are cited many cases in which

the rule is announced that after one has been placed under arrest the officers have the right to search his person and immediate presence without the necessity of procuring a search warrant. Sallee v. State, 54 Okla. Cr. 217, 17 P. 2d. 520; Loftin v. State, 60 Okla. Cr. 183, 62 P. 2d 664; King v. State, 73 Okla. Cr. 404, 121 P. 2d 1017; Smith v. State, 52 Okla. Cr. 315, 4 P. 2d 1076; Brumley v. State, 69 Okla. Cr. 122, 100 P. 2d 465; Simons v. State, 69 Okla. Cr. 265, 101 P. 2d 852, and other cases.

The federal case of United States v. Rembert, cited in the Smith Case, supra, gives an exhaustive review of the Federal cases touching upon the question of when it is necessary to procure a search warrant under the Federal practice. Many of the reasons given have application to state practice. In that case Judge Hutcheson, after a review of both state and federal authorities, comes to the conclusion that the officers had the right under the facts and circumstances presented to search the automobile of the defendant without the necessity of procuring a search warrant, and that the property found therein could lawfully be introduced in evidence against the defendant. This authority is exhaustive and gives many reasons for the rules announced that have application to the facts in the instant case.

In the recent case of Camp v. State, 70 Okla. Cr. 68, 104 P. 2d 572, we have had occasion to discuss a question very similar to the one here presented. The syllabus in that case reads:

"For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed. The right to immunity from a search and seizure without a search warrant may be waived.

"Where police officers stop a person for the purpose of making inquiry as to certain actions which look suspicious and ask and are given permission to examine a package in the automobile, such permission on the part of the accused constitutes a waiver of his constitutional right to immunity from a search and seizure without a search warrant."

An examination of that case reveals that two Oklahoma City policemen had knowledge of the theft of eight chickens from a packing company in Oklahoma City. They saw a known thief take a large bundle into the place of business of the defendant. Shortly thereafter, they saw the defendant place a similar package in his wife's car, which was in front of his place of business. The police officers (who did not have a search warrant) stopped Mrs. Camp, wife of defendant, as she drove away, and asked permission to examine the package, to which she consented, as the officers testified. Mrs. Camp testified that she did not invite the officers to get into her car. She made no statement as to whether or not she gave them permission to examine the package, but stated that they ordered her to drive to the police station. The issue involved was the admissibility of the evidence as to the search of said car, and package, and the seizure of the stolen chickens. Judge Jones, in delivering the opinion of the court, said:

"The defendant's chief contention is that the court erred in permitting certain police officers to testify as to their search of the automobile of the defendant's wife and as to the chickens found therein, over the objection of the defendant, as the same was an unlawful search and seizure in violation of the constitutional rights of the defendant.

"It is stated in Hargus v. State, 58 Okla. Cr. 301, 54 P. 2d 211, 212:

" 'For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make

reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed.'

"Mrs. Camp had certainly come under the observation of the officers, and there was sufficient reason to believe that a crime had been or was about to be committed. The officers were justified in stopping her and making inquiries.

"Officer Harbolt testified that Mrs. Camp gave him permission to examine the package. This testimony is uncontradicted.

"It has been held in Hurst v. State, 25 Okla. Cr. 102, 219 P. 151, and in Gaines v. State, 28 Okla. Cr. 353, 230 P. 946, that the right to immunity from a search and seizure without a search warrant may be waived.

"No unlawful search and seizure has been shown, and the testimony complained of was admissible.

"There is a conflict in the testimony, but there is ample evidence in the record to sustain the conviction."

See, also, the case of Jones v. State, 33 Okla. Cr. 369, 244 P. 456.

From the statement above made, we are of the opinion that the court did not err in overruling the motion of the defendant to suppress the evidence in this case by reason of the fact that the officers did not have a search warrant to enter the garage of the defendant, and that the defendant waived any right he may have had to the searching thereof.

With reference to the second proposition submitted by defendant, we are of the opinion that there is nothing in the evidence to substantiate the fact that defendant only intended to take the tires and accessories from the Ford automobile, and did not intend to steal the car. The car

was taken from the streets of Ponca City on the night of July 15, 1941, without the consent of the owner. It was kept in defendant's garage until the next night, and then taken by defendant and his wife to a place 60 miles distance therefrom, in another county, and a mile and a quarter from the highway, in a secluded spot, where the wheels were removed, and it was stripped of its valuable parts. There was no attempt on the part of the defendant to deliver it back to the owner, nor did he give any information as to its whereabouts. Under this evidence the jury was justified in finding that the defendant had stolen the automobile without the consent of the owner, and with the unlawful intent to deprive the owner thereof.

In defendant's brief attention is called to 21 O. S. A. 1941 § 1787, which is as follows:

"From and after the passage of this Act, it shall be unlawful for any person or persons to loiter in or upon any automobile or motor vehicle, or to deface or injure such automobile or motor vehicle, or to 'molest, drive, or attempt to drive any automobile, for joy riding or any other purpose, or' to manipulate or meddle with any machinery or appliances thereof without the consent of the owner of such automobile or motor vehicle."

In support of his contention, defendant cites the case of Saferite v. State, 67 Okla. Cr. 229, 93 P. 2d 762, and that of Hughes v. State, 61 Okla. Cr. 40, 65 P. 2d 544. The facts in these cases do not in any way bring them within the facts of the instant case, and we do not think the statute above quoted is applicable to the facts here presented. The facts do not justify a belief that the automobile in the instant case was taken only for the purpose of molesting the same, but rather for the purpose of appropriating it to the use and benefit of the defendant, and depriving the owner thereof.

434

For the reasons above stated, the judgment of the district court of Kay county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.