## BYFORD et al. v. STATE.

No. A-11040.  Dec. 7, 1949.

(212 P. 2d 476.)

R. O. Swimmer and Earl E. James, Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

PER CURIAM. The defendants, Harold Eugene Byford and George A. McCully, were jointly charged with the possession of intoxicating liquors by information filed in the court of common pleas of Oklahoma county. A motion to suppress was filed on behalf of each defend-

ant, but 20 days after filing withdrawn as to Byford. A hearing was had on the motion for McCully, the said defendant testified, and both sides introduced evidence, and the motion to suppress was by the court overruled, and exceptions allowed.

Thereafter, and on December 15, 1947, the case came on for trial, and the defendants were tried and separate verdicts were returned, each defendant being found guilty and sentenced to pay a fine of $500 and each to serve six months in jail.

The defendants have perfected their appeals to this court. The petition in error contains some 20 assignments of error, but in brief said assignments are argued under seven propositions, as follows:

"(1) The trial court erred in upholding the search and seizure as no search warrant was ever issued.

"(2) The trial court erred in overruling defense objection to the introduction of evidence.

"(3) The trial court erred in upholding the search and seizure which was not 'incidental to' or 'related to' the arrest which had been made for a different and wholly foreign crime, carrying a pistol.

"(4) The arrest for carrying a pistol, being but a subterfuge for the illegal search, the unlawful and unreasonable search should not have been upheld.

"(5) The trial court erred in failing to declare a mistrial upon making of prejudicial statements by county attorney.

"(6) County attorney committed reversible error in argument to jury.

"(7) The evidence is insufficient to show commission of crime by defendant Harold Byford."

Counsel argue the first four propositions together, the fifth and sixth together, and the seventh alone. We have had the benefit of a supplemental brief filed by both defendants, and also a separate reply brief filed for the defendant Harold Eugene Byford. We shall, however, first consider the action of the trial court in overruling the motion to suppress filed by the defendant McCully. By reason of this unusual fact situation and there being some difference in the evidence at the hearing on the motion and at the trial, our treatment will require some repetition of pertinent evidentiary matters.

On motion to suppress, the defendant McCully testified, but first used Dwight E. Brown, chief of detectives, Oklahoma Police Department. Mr. Brown testified in substance that his department received a call shortly after midnight, and on September 5, 1947, from Officer Muse that he and Officer Voegle had located a truckload of liquor and that they had a flat tire on their car and wanted assistance; that he immediately got up and drove to the Shaver's Tourist Courts; across from the Taylor School (further described on cross-examination as being outside the city limits located on U. S. Highway 62 northeast of Oklahoma City, and on the road otherwise known as Northeast Twenty-third Street Road) where he had been directed to come, and when he arrived he found one deputy sheriff out in front, and back in the tourist courts, in a public place, he found Officers Grady Muse, George Voegle, and Noah Richmond, found defendant McCully in custody, and that the defendant had a cab-over-engine Ford truck parked there with a seal on the back end; that McCully accompanied by Officer Muse drove the truck to the sheriff's office in Oklahoma county; that the defendant Harold Byford drove up at the east end of the alley at the sheriff's office and asked McCully

if he had the key to the back end of the truck, and that McCully answered in the affirmative and stated that Byford said: "Let me have it", and McCully gave Byford the key, and Byford went to the rear of the truck, unlocked it and after some difficulty with the seal, opened the doors and said: "There it is". Mr. Brown further testified that Officers Turner, Borden, Taylor, and others were present; that the liquor was then removed from the truck to the basement of the sheriff's office for storage.

Defendant McCully admitted on hearing that his truck was loaded with approximately 4,032 pints of whisky and 128 pints of ale. He testified that he drove up to the tourist court, locked his truck and went to the office to get a room and to telephone a "fellow" whom he later identified to the defendant Harold Eugene Byford, whom he was supposed to meet there, and that he was waiting for him when the officers came up; that his truck was water-tight and the cargo could not be seen or identified without opening the back truck doors; that both the truck and the liquor belonged to him; that he was 31 years of age and that his occupation was cook, waiter and truck driver, and that at the time of hearing he was working as a waiter at a cafe on North Broadway, Oklahoma City; that on September 5, 1947, he had owned the truck in which he was then hauling whisky for about three months; that he got the load of whisky about 20 miles southeast out of Oklahoma City from wholesalers; that defendant Harold Byford was purchasing the whisky but had not paid him for it, and was not to pay until he received the whisky. Defendant admitted that he did not have enough money to pay for the load, but stated that some unnamed person loaned him part.

Concerning his arrest defendant McCully stated that, "Well, I stepped out the back door. I had been talking to Mr. Byford, using the telephone, and the officers drove up. I stepped out the back door and they arrested me." McCully testified that no search warrant was served on him. He stated that the officers called him over to them, among them being Officers Muse and Borden. He further stated that he was armed with a .38 calibre pistol, that he did not have on a coat, and that the pistol was stuck in his right-hand pants pocket with the handle sticking out; that the officers took his pistol and searched him and told him to get in his truck and drive it to town and Officer Muse accompanied him. He denied telling Muse on the way to town that he was working for Byford, but stated that he told him that he worked for him once in a while; that he had done a job or two for Byford. He admitted that Byford broke the seal to the cargo after he and Officer Muse were at destination in the alley at the sheriff's office on the north side of the Oklahoma county courthouse.

The state offered the evidence of Officers Muse, Borden, and Richmond. Officer Muse testified that he and Officer Borden saw the truck (McCully's) as it was driven into the Shaver Tourist Courts and that as soon as the county officers, Richmond and Voegle, arrived, they went to the truck and flashed their lights on it, and about that time defendant McCully stepped out of the office at the courts and the officers could observe that he had a pistol in his right-hand pants pocket, the handle sticking out; that they had information that he would be armed; that one of the sheriff's deputies arrested McCully for carrying a pistol; that he, Muse, was asked to ride to the sheriff's office with McCully; that on the way, in conversation, McCully told him that he was work-

ing for defendant Byford; that it could be readily seen that the truck was heavily loaded by reason of the difficulty in stopping and starting in the city traffic. That McCully stated that he was carrying a pistol to protect his load from hi-jackers. They parked the truck in the alley on the north side of the courthouse; that defendant Byford came up. "He said, 'I suppose you want this opened,' and went around to the back and he was unable to break the seal with his bare hands, and so he went to the cab of the truck and either got a pair of pliers or screw-driver from the back of the seat, and went to the back of the truck and broke the seal with this object and threw the seal under the car." Byford was not in custody and his action was voluntary. He obtained the key from McCully and his remarks were made in McCully's presence, and without protest from him.

Officer Borden's testimony concerning the arrest was substantially the same as that of Officer Muse. He stated that there was no attempt to stop the truck on the highway or to search the truck or take charge of it, and that McCully was not arrested until the county officers observed that he was armed. Deputy Sheriff Richmond testified that Deputy Voegle arrested McCully and that he saw Voegle take a pistol out of McCully's waist band.

In considering McCully's motion to suppress, we are bound by the rule that where there is any evidence tending to reasonably support the findings of the court, the action of the court will be sustained. See Mitchell v. State, 73 Okla. Cr. 184, 119 P. 2d 99.

Two questions are involved: Was the arrest of McCully in accordance with law, and, in the absence of a search warrant, was the search of defendant's truck legal? The answer to both questions is yes, based on the facts recited. Section 1272 of Title 21, O. S. A. 1941, provides:

"It shall be unlawful for any person in the State of Oklahoma to carry upon or about his person any pistol, revolver, * * * or any other offensive or defensive weapon, except as in this article provided."

This statute has been construed in the case of Pierce v. State, 42 Okla. Cr. 272, 275 P. 393, and conclusively answers the first question.

Concerning the search, it will be noted that no effort was made to search the cargo truck of the defendant following his arrest. The truck was parked and locked and some 50 feet from the office of the tourist courts, the keys were not obtained nor was McCully asked anything about the cargo, but he was directed to drive to the sheriff's office at Oklahoma City, and Officer Muse was asked by one of the deputies to accompany him. The voluntary statement by McCully to this officer that he was carrying the pistol to protect his "load", without disclosing the nature of the load, was not sufficient to justify search. It is true that on trial Officer Muse testified that McCully stated that he was hauling a load of whisky, which voluntary statement in itself would have justified a search, McAfee v. State, 65 Okla. Cr. 65, 82 P. 2d 1006; Miles v. State, 31 Okla. Cr. 4, 236 P. 907; Tripp v. State, 73 Okla. Cr. 69, 118 P. 2d 273, yet on motion to suppress that was not brought out, so that on arrival at the sheriff's office, under the facts disclosed, the officers had no right nor authority to search the truck. This statement is supported in principle by the following cases: Taylor v. State, 118 Okla. 262, 247 P. 377; Edwards v. State, 83 Okla. Cr. 340, 177 P. 2d 143; Wallace v. State, 42 Okla. Cr. 143, 275 P. 354; Crim v. State, 78 Okla. Cr. 153, 145 P. 2d 444, and Dean v. State, 37 Okla. Cr. 396, 258 P. 812.

And as stated in the Crim case, above:

"Whether a search of or seizure from an automobile, parked on a public street, without a warrant, is or is not unreasonable within the meaning of the constitutional provision forbidding unreasonable searches and seizures, is a judicial question to be determined in each case in view of all the facts and circumstances under which the search or seizure is made."

But before McCully had gotten out of his truck, after arrival at the sheriff's office, something happened, that in connection with the prior statements of McCully, amounted to a waiver by McCully of his constitutional rights guaranteed him under art. 2, § 30, of the Bill of Rights (See Camp v. State, 70 Okla. Cr. 68, 104 P. 2d 572, holding that such rights may be waived). The man whom he stated he was to have met at the Shaver Tourist Courts, and with whom he was engaged in conversation by telephone when the officers arrived at the courts, drove up, was recognized by at least several of the officers, and he approached McCully, who was still seated in the cab of the truck. Byford stood shaking his head and looking up at McCully. And prior to any effort or demonstration by the officers with reference to the truck and its cargo, Byford, as has been recited, and who was not under arrest, in the presence of the officers and McCully, said: "I suppose you want this opened," and he asked McCully for the key, and then proceeded to open up the cargo of whisky to the view of the officers, and said: "There it is." His action was strictly voluntary, and did not draw protest from McCully, who Officer Muse had testified had previously told him, on the drive to the sheriff's office, that he was still working for Byford. McCully impliedly acquiesced in Byford's statement and action. See 1 Words and Phrases, Perm. Ed., page 633, where it is said: "Acquiescence is a consent inferred from silence; a tacit encouragement."

McCully had denied that he stated to Muse that he was working for Byford, but this court must give full weight to all evidence supporting the action of the court in overruling the motion to quash. Mitchell v. State, supra. These facts taken in connection with the prior statements of McCully to Muse justified, and in fact made imperative, the search. See sections 1 and 82, Title 37 O. S. A. 1941, section 196, Title 22 O. S. A. 1941, and Clark v. State, 78 Okla. Cr. 423, 149 P. 2d 994; Tripp v. State, supra; McAfee v. State, supra, and Miles v. State, supra.

Thereafter, on trial, neither of the defendants testified. Officers Muse, Turner, Borden, Brown and Richmond again testified. Additionally, Deputy Sheriff George Voegle testified on behalf of the state. The defendants used but one witness, Y. V. Burks, Oklahoma county jailer. The testimony of the witnesses who testified on motion to suppress on the whole was substantially the same, except that Officer Muse further testified on the trial that in his conversation with defendant McCully, on the way from the tourist courts to the courthouse, McCully told him that he had a load of whisky. Also, the defendant Byford, when he was voluntarily unlocking the rear doors of the truck driven by McCully, stated that there were four cases of ale in the truck, which was for his own personal use and that he wanted the officers to leave it in the truck, that it was not unlawful to possess ale. The ale or beer was taken to the storage room, then Byford went down and soon the beer was brought back out, but Deputy McGrew ordered it taken back, and did not permit Byford to keep it. The state on trial failed to show that the ale, which was labelled "Black Label Beer," contained more than 3.2 per cent alcohol by weight, and under such facts, so far as the beer is concerned,

its possession was not unlawful, and the defendant Byford was entitled to the same. State v. Manard, 85 Okla. Cr. 105, 185 P. 2d 483.

Officer Brown testified that after Byford opened the truck and it was being unloaded, he said: "It is pretty hard to lose that kind of stuff", and "I wonder if those fellows know they are carrying better than half a hundred on their shoulders every time they go by here."

Y. V. Burks, county jailer, was called as a witness by defendants, and testified that on September 5, 1947, at 3:20 a.m., G. A. McCully "was booked with 'Carrying Concealed Weapons'"; that at 2:50 a.m. he was charged with possession of liquor. He further testified that his records disclosed that the defendant Byford was not charged or arrested at that time. He was arraigned on September 8, 1947.

It is apparent that in the beginning Officers Muse and Borden had no authority or legal cause to arrest McCully or search the truck being driven by him. The case of Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. —, cited by the Attorney General, concerns the Congressional Prohibitory Act of 1936 [see 18 U. S. C. A. § 1262], is contrary to the uniform holdings of this court, because of the distinction between Federal and state laws pertaining to search and seizure. The dissenting opinion by Mr. Justice Jackson, concurred in by Justices Frankfurter and Murphy, considered in principle, is more in line with the view of this court with reference to search and seizure. But the officers did not attempt to search the truck or to stop it, but they determined to keep it in view, and 'phoned the county officers when the truck was observed to enter the Shaver Tourist Courts. Later, the officers flashed their lights on the truck in question

but could not observe the liquor they thought was being hauled. Still, without a warrant they could not search. They could not even arrest McCully, except that when he came out of the tourist court's office, it was observed that he was armed with a pistol; and as we have seen, by reason of section 1272, of Title 21, O. S. A. 1941, it was the duty of the officers to arrest McCully, a misdemeanor being committed in their presence. This they did, but made no effort even then to search the truck.

We would emphasize that in this case there is not involved the question of whether or not the whisky was discovered incidental to a lawful arrest, because no search was ever attempted using the arrest as a basis for search.

By reason of the facts stated, we conclude that there was sufficient evidence before the jury to support the ·charge of possession as to the defendant Harold Eugene Byford. He convicted himself, as did McCully. He demonstrated complete knowledge as to the contents of the truck. And while the defendant McCully had the cargo of liquor in actual possession and control prior to the appearance of Byford, yet the jury could consider the circumstances that he readily gave Byford the key to the cargo, that Byford took possession of the beer to take home, was prevented by the officers from doing so, but so far as McCully was concerned, he was acquiescing in the activities of Byford and recognized his authority in connection with the cargo, and Byford appeared to do all the talking after he arrived. It is therefore the view of the court that the facts proven beyond a reasonable doubt are such as to exclude every reasonable hypothesis inconsistent with the guilt of the defendants, and thus meets the test announced in Starr v. State, 63 Okla. Cr. 302, 74 P. 2d 1174, and in Courtwright v. State, 79 Okla. Cr. 270, 154 P. 2d 588, and cases cited.

242

Defendants complain of statements of the county attorney in his argument to the jury. He read the court's instructions to the jury and then attempted to illustrate the meaning, and was corrected by the court in one instance. We have read the record and do not find reversible error.

By reason of the foregoing, the verdict of the jury and the judgment of the court based thereon finding the defendants guilty as charged, is affirmed.