**Fayette D. CURTIS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. M–76–758.

Court of Criminal Appeals of Oklahoma.

March 29, 1977.

Jack B. Sellers, Sapulpa, Joe A. Moore, Memphis, Tenn., for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Donnie G. Pope, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Fayette D. Curtis, hereinafter referred to as defendant, was charged, tried and con- victed in the District Court, Pawnee Coun- ty, Case No. CRM–75–208, for the offense of Being in Actual Physical Control of a Motor Vehicle While Under the Influence of Intoxicating Beverage, in violation of 47 O.S.1971, § 11–902(a). His punishment was fixed at ten (10) days in the county jail and a fine of Five Hundred Dollars ($500.00) and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Bill Reddington testified that on May 24, 1975, he was employed as a police officer in the City of Cleveland, Okla- homa; that at approximately 3:00 a. m. he received a radio dispatch from Officer Kes- ter who had just gone off duty. He pro- ceeded to a location approximately seven miles west of the city and observed a late model Lincoln Continental parked on the shoulder of the road with its motor running and its lights burning. He approached the vehicle and observed a person, whom he identified in court as the defendant, slumped behind the wheel sleeping. The driver's window was open and he detected a faint odor which he associated with alcohol. He shook the defendant and managed to awaken him after several minutes. De- fendant was removed from the car and placed under arrest. He transported the defendant to the police station and advised him of his rights concerning a chemical test. Defendant consented to submit to a blood test. Lab technician Larry Flemming came to the jail and administered the test. Two viles of blood were removed from the de- fendant's arm, placed in a blood test kit and mailed to the Oklahoma Bureau of Investi- gation in Oklahoma City. He testified that, in his opinion, the defendant was under the influence of an intoxicating beverage.

Dennis L. Goodpasture testified that he was employed as a Forensic Chemist for the Oklahoma State Bureau of Investigation. He further testified that he analyzed the blood sample, State's Exhibit No. 1, sub- mitted by the Cleveland Police Department and found that it contained a blood alcohol content of 0.11%.

Officer Cal Kester testified that on May 24, 1975, he went off duty at approximately 3:20 a. m. While en route to his home, he observed a Lincoln Continental parked on the shoulder of Highway 64 with its bright lights shining. He did not observe anyone in the car as he drove past. He turned around and drove back to the car's location. The motor was running and the window was down. He observed the defendant sitting behind the steering wheel, apparently asleep. He smelled a "moderate odor of that related to alcoholic beverage." He attempted to awaken defendant and was unsuccessful. He returned to his car and radioed Officer Reddington.

For the defense, defendant testified that on the morning of May 23, 1975, he went to Tulsa. He had lunch with some business associates and consumed one drink during the course of the meal. He went to Oklahoma City and consumed another drink while eating dinner. He left Oklahoma City at approximately 8:30 p. m. He stopped by the Ninety-Nine Club in Jennings at approximately 12:30 a. m. He was extremely tired and had another drink in an attempt to wake up. He left the club and proceeded toward his home in Cleveland. While en route he became extremely sleepy and pulled over to rest. He testified that he only had four hours sleep in the two days preceding his arrest. He denied that he was intoxicated.

Rachel Curtis, defendant's wife, and two employees of the defendant, testified concerning his lack of sleep for several days prior to the morning in question.

Jack T. Brome testified that the defendant came to his club at approximately midnight. Defendant appeared to be very tired and sleepy. He talked to the defendant for approximately thirty minutes. Defendant had one drink which he did not fully consume.

Defendant asserts, as the sole assignment of error, that his arrest without a warrant was illegal and that there was no probable cause for such arrest. We cannot agree with this assertion. Officer Kester testified that he observed the defendant's car parked beside the road with the motor running and the lights burning. He approached the car and detected the odor of an alcoholic beverage emitting through the open window of the vehicle. He attempted to arouse defendant, but was unsuccessful. He returned to his vehicle and radioed for assistance. Officer Reddington responded to Officer Kester's call. He also detected the odor of alcohol coming from the defendant's vehicle. He attempted to awaken defendant and was able to do so only after several minutes. Defendant was removed from the vehicle and placed under arrest. We, thus, conclude that Officer Reddington had probable cause to arrest defendant based upon information received from Officer Kester combined with the other matters within his knowledge.

In *Hill v. State,* Okl.Cr., 298 P.2d 1066 (1956), we stated:

"It is clear, then, that where a bystander would tell an officer that he had at a time past witnessed a person commit a crime that would be classed as a misdemeanor, that the officer would not be authorized by law on such information, in the absence of a warrant for arrest, to summarily seek out the accused, and without more, arrest him. But, as may be discovered from a study of the cases cited immediately above, the officer would have a right, and it would be his duty, to seek out and search for a person said to be operating a motor vehicle in a careless and reckless manner, or a surreptitious manner or even where the informant thought the operator intoxicated, . . ."

This rule of law was re-enforced by this Court in *Moore v. State,* Okl.Cr., 306 P.2d 358 (1957), wherein we stated:

"As a general proposition we have said that for the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about

to be committed. *Camp v. State,* 70 Okl.Cr. 68, 104 P.2d 572."

In conclusion, we observe the record is free of any error which would cause reversal or justify modification. The judgment and sentence is accordingly. AFFIRMED.

BLISS and BRETT, JJ., concur.